E. R. BLISS *et al.*

*v.*

A. MONTGOMERY WARD *et al.*

*Opinion filed June 19, 1902—Rehearing denied October 9, 1902.*

1. PARKS—*lands made by filling east of the Illinois Central tracks, in Chicago, must be kept free from buildings.* The extension of the Lake Front Park by filling in from the shore line of Lake Michigan to the east in Chicago did not deprive the owners of lots bordering upon the park, as originally dedicated, of the right to have the ground between such lots and the lake kept free from buildings, but the park, as extended between the lots and the lake, is subject to the same conditions as the original dedication.

2. SAME—*effect of act of 1863, extending corporate limits of city of Chicago.* The act of 1863, reducing the charter of the city of Chicago to one act and extending the corporate limits of the city so as to include the waters and bed of Lake Michigan for a distance of one mile east of the shore, did not transfer title to the submerged lands within such extended limits to the city of Chicago.

3. SAME—*effect of various acts relating to the Lake Front Park.* The effect of the acts of June 11, 1897, April 22 and April 24, 1899, and May 10, 1901, relating to the Lake Front Park in Chicago, is merely to show that the legislature assented to the act of the city of Chicago in extending the park over submerged lands to the outer sea wall, and recognized that it had granted to the city the privilege of filling from the shore line and making such extension for the uses of the park.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

DAVID QUIGG, and GEORGE GILLETTE, (E. R. BLISS, of counsel,) for appellants:

The State of Illinois is the owner in fee simple of the submerged lands here in controversy, east of the grounds and right of way of the Illinois Central Railroad Company. *Railroad Co.* v. *Illinois,* 146 U. S. 387; *Illinois* v. *Railroad Co.* 33 Fed. Rep. 730; *Hammond* v. *Shepard,* 186 Ill. 235; *Revell* v. *People,* 177 id. 468; *Shively* v. *Bowlby,* 152 U. S. 1; *Morris* v. *United States,* 174 id. 196; *Fuller* v. *Shedd,* 161 Ill. 462; *People* v. *Kirk,* 162 id. 138.

The submerged lands in controversy are not charged. or impressed with any easement or servitude imposed upon the land indicated upon the plats of fractional sections 10 and 15. *Hoboken* v. *Railroad Co.* 124 U. S. 656; *Morris* v. *United States*, 174 id. 196; *Shively* v. *Bowlby*, 152 id. 1; *Revell* v. *People*, 177 Ill. 468; *Ruge* v. *Canning Co.* 25 Fla. 656; Dillon on Mun. Corp. (4th ed.) sec. 634; *Barney* v. *Keokuk*, 94 U. S. 324; *Chicago* v. *Ward*, 169 Ill. 392; *Railroad Co.* v. *Illinois*, 146 U. S. 387.

The State cannot be deprived of any of its rights or property except by a valid, express legislative grant. *Morris* v. *United States*, 174 U. S. 196.

The restrictions in question are confined to that strip of ground four hundred feet west of the west line of the railroad right of way. *Chicago* v. *Ward*, 169 Ill. 392; Act of 1861, sec. 64; Act of 1863, chap. 7, sec. 43; Ordinance of June 14, 1852.

Riparian rights are confined to the right of access and right to natural accretions. *Revell* v. *People*, 177 Ill. 468.

The right to have a certain view or prospect from one's estate, as an easement, cannot be acquired by enjoyment, however long continued. Nor will such a right pass by implication. It can only be created by an express grant or covenant. 2 Washburn on Real Prop. (3d ed.) 319; Jones on Easements, 472.

The State may appropriate portions of its submerged lands and thereby destroy the riparian rights appurtenant to the shore land. *Revell* v. *People*, 177 Ill. 468; *People* v. *Kirk*, 162 id. 138; *Morris* v. *United States*, 174 U. S. 196; *Shively* v. *Bowlby*, 152 id. 1; ·*Hoboken* v. *Railroad Co.* 124 id. 656; *Barney* v. *Keokuk*, 94 id. 324.

The filling in of these submerged lands by the State, which appellees and the city have consented may be done, cuts off all riparian rights of the city, because it destroys contiguity of the railroad grounds to waters of the lake. *Railroad Co.* v. *Illinois*, 146 U. S. 445; *Revell* v. *People*, 177 Ill. 468; *Bristol* v. *County of Carroll*, 95 id. 84.

JOHN BARTON PAYNE, also for appellants:

While the original plat showed the lots of appellees as abutting upon open public ground or a highway, yet by the subsequent establishment of the park and the defining of the limits of Michigan avenue such lots thenceforth abutted upon Michigan avenue alone.

It is at least questionable whether the owners of such abutting lots have any right in or over Lake Park. Conceding, for the purposes of this case, that they have, it is only a right to such light and air as specially accrue to their premises by reason of the park. No special right of access to the park exists in the abutters.

To successfully enjoin the erection of any building upon the park, such abutters would have to show that such building would obstruct the flow of light and air so as to appreciably affect the market value of their premises, separate and apart from any effect upon property in the neighborhood generally.

Only such rights accrue to abutters under the plat or by the establishment of the park as are "highly beneficial and convenient." (*Field* v. *Barling*, 149 Ill. 556.) Such rights arise, in either case, by implied grant.

By virtue of the Statute of Plats the title to highways vests in the public authorities. This is an express grant to such authorities for street purposes. Flowing from or as an incident to this conveyance, a right springs up in the abutter commensurate with the physical advantage peculiar to his lot. This is a grant by implication, and an "easement of view" never passes by such a grant. 2 Washburn on Real Prop. (3d ed.) 319; Jones on Easements, p. 472.

Even an easement of light arises from an implied grant only "when it is indicated fairly and clearly and is evidently necessary to the reasonable enjoyment of the premises." 10 Am. & Eng. Ency. of Law, (2d ed.) 425, note.

The words upon the plat, "public ground to remain vacant of buildings," granted to no abutter a special

right to complain of structures upon any part of such ground, irrespective of the question whether such structure would specially injure him or not. Such limitation as to buildings was a characterization of the grant to the public, and had no more effect to give a special cause of action in the abutter than the ordinary establishment of a public park, which latter is prohibitive of buildings.

, The grant to the Illinois Central Railroad Company of the strip for railroad purposes destroyed its alleged use for park purposes and left the said strip as private ground. *Kotz* v. *Railroad Co.* 188 Ill. 578.

There is no plat, deed, grant or anything whatever in the record which can be pointed to as a grant to Michigan avenue abutters of any right whatsoever in or over the submerged land in question.

GEORGE P. MERRICK, (THOMAS A. MORAN, of counsel,) for appellees:

The title to the made or reclaimed ground east of the land in existence at the time of the dedications is in the city of Chicago as riparian owner, subject to the trust imposed upon it that such land shall remain forever vacant of buildings, and this court has denied the right of the city to authorize construction of buildings upon it. These lands, declared to be a public park, extended to the waters of Lake Michigan. *Chicago* v. *Ward*, 169 Ill. 392.

The fact that the railway company filled in the land by the construction of its railroad and breakwater did not deprive the city of its riparian rights or make such artificial or made land railway property. *Railroad Co.* v. *Illinois*, 146 U. S. 387.

The title of the Illinois Central Railroad Company to its right of way is but a right to use the strip. This use did not and does not deprive the city of its riparian rights, and it has now as full liberty to exercise such rights as it ever had, and the city holds the riparian rights for appellees and all other abutting property own-

ers on the park, and for the public. *Railroad Co.* v. *Illinois,* 33 Fed. Rep. 730; *Railroad Co.* v. *Illinois,* 146 U. S. 387.

As trustee for the public and the abutting property owners on Lake Park it was and is the duty of the city to preserve the trust imposed upon it in accordance with the intention of the dedication of the tract, which was that the land should forever remain clear and vacant of buildings to the waters of Lake Michigan. *Chicago* v. *Ward,* 169 Ill. 392.

The city has proven recreant to its trust, and appellees are proper parties to invoke the protection of the property in the use for which it was dedicated. *Chicago* v. *Ward,* 169 Ill. 392; *United States* v. *Railroad Co.* 154 U. S. 225.

The acts of 1897 and 1899 are unconstitutional and void because they attempt to divest the abutting property owners of their vested rights in Lake Park. Const. of U. S. art. 1, sec. 10, par. 1; *Chicago* v. *Ward,* 169 Ill. 392.

These vested rights consist in the easement over Lake Park of (1) access; (2) light; (3) air. "In this case it is a vested right attaching to the abutting property by virtue of the original dedications." *Chicago* v. *Ward,* 169 Ill. 392.

Appellees are abutting property owners on Lake Park. As such they are proper parties complainant in a bill to enjoin a destruction or curtailment of their easement over the park. The city is bound to preserve their rights therein. *Jacksonville* v. *Railroad Co.* 67 Ill. 540; *Princeville* v. *Auten,* 77 id. 325; *Earll* v. *Chicago,* 136 id. 277; *Chicago* v. *Ward,* 169 id. 392; *United States* v. *Railroad Co.* 154 U. S. 225; *Davenport* v. *Buffington,* 97 Fed. Rep. 234; *Sturmer* v. *County Court,* 36 L. R. A. 300.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Cook county granted the prayer of a bill filed by appellees, and enjoined the appellants, the Board of Commissioners of Lake Front Armory and Parade Grounds, from constructing or erecting any build-

ing or other structure on that part of Lake Park lying east of the Illinois Central Railroad Company's right of way bounded on the north by the south line of Randolph street extended east, on the south by the north line of Monroe street extended east, and on the east by the harbor line established by the Secretary of War. From that decree appellants took this appeal.

We affirmed a previous decree of the superior court of Cook county enjoining the city of Chicago from placing or causing to be placed any building or structure upon that part of Lake Park west of the right of way of the Illinois Central Railroad Company, except certain buildings then located thereon, mentioned in said decree. (*City of Chicago* v. *Ward*, 169 Ill. 392.) The rights asserted by complainants in this suit are based on substantially the same facts as in that case, so far as they relate to the dedication of Lake Park and the easement claimed by complainants, and a full history of such facts will be found in the opinion in that case and the statement preceding the same. Referring to the more comprehensive statement in that case, and the similar statement preceding the opinion of the Supreme Court of the United States in *Illinois Central Railroad Co.* v. *Illinois,* 146 U. S. 387, for a complete history of the park and the legislation respecting it, the most important facts may be briefly stated as follows:

Complainants own lots and buildings fronting on Michigan avenue and Lake Park, between Washington and Madison streets, in the city of Chicago. These lots are a part of Fort Dearborn addition to Chicago, which had for its eastern boundary the shore line of Lake Michigan. The land was owned by the United States, and was subdivided into lots, blocks, streets and public grounds in the year 1839 and platted as Fort Dearborn addition, and an open space was reserved for public ground east of Michigan avenue, between Randolph and Madison streets, fronting on Lake Michigan, by means of the

words marked on the plat, "Public ground forever to remain vacant of buildings." In the acknowledgment of the plat the following declaration was made: "The public ground between Randolph and Madison streets, and fronting upon Lake Michigan, is not to be occupied with buildings of any description." This addition was in section 10, and the lots were sold with reference to the plat. The State of Illinois, by its board of canal commissioners, had previously, in the year 1836, platted the lands immediately south, in section 15, which the United States had granted to the State for canal purposes, and on the plat the lands lying east of the east row of blocks, and extending to Lake Michigan, were marked "Michigan avenue." The lots in that subdivision were also sold with reference to the plat, and the canal commissioners used a sketch to sell from and point out the position of lots to purchasers, on which was marked, "Open ground.— No buildings." The lots sold at a higher price on account of the eastern exposure to the lake and the reservation of the lands to the public use without buildings. The city of Chicago accepted the dedication of Lake Park by a resolution of April 29, 1844, providing that all that part of Michigan avenue which lay east of a line ninety feet east of the east line of the tier of lots fronting on the avenue, and that part in Fort Dearborn addition lying east of a certain line, should be enclosed in a public park at the expense of subscribers to such enclosure.

The State granted to the Illinois Central Railroad Company the right to locate and construct its road upon and to appropriate to its use a right of way over lands of the State, but the company was not authorized to make a location within any city without the consent of the common council of the city. The railroad company located its right of way and railroad within the limits of the city of Chicago in Lake Michigan, over submerged lands in front of Lake Park, and consent was given to such location by an ordinance of the common council of

the city adopted June 14, 1852. The tracks were laid on piling placed in the waters of the lake, and the space between the shore line and the tracks of the railroad company was filled under the direction of the city and became solid ground. In 1861, by an act of the legislature, the dedication by which the public ground east of the lots fronting on Michigan avenue should forever remain open and vacant was recognized. The right of way of the railroad company was also filled so that the shore line of Lake Michigan was east of such right of way. Afterward the Illinois Central Railroad Company claimed title to the submerged lands constituting the bed of the lake lying east of the tracks, within the corporate limits of the city, for a distance of one mile, and litigation arose between the State, the city and said company concerning their respective titles, which was ended in the decision of the Supreme Court of the United States in *Illinois Central Railroad Co.* v. *Illinois, supra.* In that suit the State of Illinois claimed the title to the submerged lands lying east of the right of way of the railroad company, and prayed for a decree establishing and confirming its title, with the exclusive right to develop and complete the harbor by the construction of docks, wharves, piers and other improvements, subject only to the paramount authority of the United States in the regulation of commerce, and the right to fill in the bed of the lake and improve its shore for the promotion, generally, of commerce and navigation. The city claimed the ownership in fee of the public grounds on the east front of the city bordering on the lake and exhibited on the plats of the two subdivisions above mentioned, and all riparian rights attached to such ownership. The court adjudged that the State of Illinois was the owner in fee of the submerged lands constituting the bed of Lake Michigan east of the railroad tracks, in trust for the people of the State, that they might enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein

freed from the obstruction or interference of private parties. The court held that the fee to the lands dedicated to public uses on the lake front by the plats in question passed to the city of Chicago; that the fee of the made and reclaimed ground between Randolph street and Park Row by filling in from the shore line, embracing the ground upon which the tracks of the railroad company were laid, was in the city; that the city had the rights of a riparian ownership, subject to the conditions of the agreement under which the tracks and breakwater were constructed by the railroad company, and that the city, as riparian owner, and by its charter, had power to construct and keep in repair, east of said premises, public landing places, wharves, docks and levees, subject to the authority of the State and to such supervision and control as the United States might rightfully exercise. It was decided that the railroad company had a perpetual right of way over the ground for the tracks of its railway, and the continuance of the breakwater as a protection of its property and the shore from the violence of the lake. This adjudication was conclusive of the rights and titles of the respective parties at that time.

The question of the right of the complainants, as against the city of Chicago, to have the lands west of the railroad tracks, as appearing on the original plats and as added to by filling and reclamation, kept free from buildings, was adjudicated in *City of Chicago* v. *Ward, supra.* It is now contended that the decision in that case fixed and determined the limits of the ground to which the building restriction extended, and that such limits were confined to the lands west of the railroad tracks. That claim is untenable. It is true that an ordinance of the city of Chicago, hereinafter mentioned, purporting to extend Lake Park eastward to the harbor line had been passed before that decision, and another ordinance had been passed transferring the park to the South Park commissioners; but there had been no attempt to put any

structure on that part of the park, nor any occasion for an injunction against a threatened invasion of any rights claimed by the complainants east of the railroad. The lands east of the railroad tracks were submerged by the waters of Lake Michigan, and there had been no threat to interfere with any claimed right. This suit is not between the same parties, and if it were, the question how far the restriction extended was in no way involved in the litigation and was not decided.

It is also argued by counsel that the dedication by the United States of the land in Fort Dearborn addition fronting on the lake as public ground, to remain vacant of buildings, was only of the land which the United States then owned to the shore line of Lake Michigan, and the title to the submerged lands being in the State of Illinois, they may be filled and reclaimed and devoted by the State to building purposes. It is true that the United States was the owner of the land to the shore only, (*Shively* v. *Bowlby*, 152 U. S. 1,) and by the plat did not charge the adjoining submerged lands with any easement or servitude. But when the land was dedicated to the public use, to be kept forever free from buildings, and the dedication was accepted by the city, the fee passed to the city, and it had all the rights of a riparian proprietor as to the accretions and additions to the land, the same as a shore owner. If the land dedicated by the United States should be increased by natural accretions the park would be enlarged and the addition would become a part of it. Upon the admission of the State of Illinois into the Union it became vested with the title of the lands within its borders under the waters of the lake, so that while the dedication by the United States would carry such natural accretions as subsequently came to the park, the State might have appropriated the submerged lands adjoining, to such use as would not have been inconsistent with the trust upon which they were held. That trust is for the people of the State, that they

198—8

may enjoy the navigation of the waters, carry on commerce over them and have liberty of fishing therein freed from the obstruction or interference of private parties. The State does not hold absolute title irrespective of such trust, and its control must be consistent with the purposes of the trust. (*Illinois Central Railroad Co.* v. *Illinois, supra; People* v. *Kirk*, 162 Ill. 138.) We held in *Revell* v. *People*, 177 Ill. 468, substantially, that a shore owner has no right to increase the boundary of his premises by building out into the lake for that purpose, and that the only rights which he has are the common law rights of access from the lake to his land and the right to natural accretions. The State of Illinois, however, as we shall see, did not grant or appropriate the submerged lands in front of the park for wharves, docks, piers or other uses promoting navigation, or attempt to apply them to any use, but permitted the city, as shore owner, to add to the park by filling and recognized the reclaimed lands as a part of the park. Furthermore, in the case of *Illinois Central Railroad Co.* v. *Illinois, supra*, the Supreme Court of the United States confirmed the title in the city of Chicago to the lands beyond the original dedication reclaimed from the waters of the lake and filled under the direction of the city, and even to the lands filled and occupied by the Illinois Central Railroad Company, subject to railroad uses. Although the original dedication by the United States was only to the shore line with natural accretions, the city, as shore owner, has been permitted by the State to exercise the right of extending the park by filling along the shore.

Connected with this subject is a claim on behalf of complainants that title to the submerged lands east of the railroad was conveyed to the city of Chicago in trust for the public and the abutting property owners on Michigan avenue by virtue of the act of 1863, revising and reducing to one act the charter, and amendments thereto, of the city of Chicago. By that act the corpo-

rate limits of the city were extended so as to include the waters and bed of the lake for a distance of one mile east of the shore. Counsel say that this act conferred title on the city of Chicago; that the city would not be permitted to erect buildings on its land, and that the defendants propose to put up the armory on said lands owned by the city, and, therefore, are estopped, as the city would be. They seem to regard it as important to establish the title in the city, but under the circumstances of this case we do not see that it makes very much difference whether the fee is in the city or in the State. The State of Illinois was the dedicator in the canal trustees' subdivision, and sold the lots with the agreement that the ground was to be kept open and free from public buildings. The State was both the shore owner and the owner of the adjoining submerged lands. It held them by titles different in character, the shore lands being held for sale and the submerged lands being held in trust for the people of the whole State for purposes of navigation, commerce and fishing. It could appropriate the submerged lands for any purpose within the trust for which they were held, subject only to any rights of lot owners arising out of the dedication and the agreement with them, and as to the lands in front of Fort Dearborn addition, would not be affected by the dedication of the shore owner, the United States; but it did not make such appropriation. The city received the title dedicated by the United States and the State, in both subdivisions, in trust for the public use, and has been allowed by the State to extend the park by artificial means. The ground dedicated fronted on Lake Michigan, and the property owners on Michigan avenue bought their lots with the distinct understanding that there should never be any building between their lots and the lake. If the State had intervened and devoted the submerged lands to some other use within the trust the question would be a different one; but we are of the opinion that when the

limits of the park were extended into the lake, no right was acquired to erect buildings between the lots and the lake although at a greater distance from the lots, and that the park, as extended between the lots and the lake, is subject to the same conditions and limitations as the original dedication.

The claim, however, that the act of 1863 conferred title upon the city for a distance of one mile from the shore line cannot be sustained. The extension of the corporate limits did not transfer title to all the premises within such corporate limits. A corporation must have a definite locality in which to exercise its rights and within which public duties are imposed upon it. Its jurisdiction is confined to such locality, and the corporation is charged with the custody and control of streets, alleys and public grounds within the corporate limits, in trust for the benefit of the people of the State, but lands do not become public grounds merely because they are within such limits. In 1892, long after this act was passed, the Supreme Court of the United States decided the title of the submerged lands to be in the State, and that question was *res judicata.* We also held in *People* v. *Kirk, supra,* that the State holds the title to the submerged lands of Lake Michigan lying within its boundary in trust for the people of the State. There was the same ruling in *Revell* v. *People, supra,* and in both cases the lands involved were within the corporate limits of the city of Chicago. The city was re-incorporated in 1875 under the general Incorporation act of 1872, with the same territorial limits as before.

After the decision by the Supreme Court of the United States which settled the titles and rights of the city and the State, the city of Chicago adopted an ordinance on June 28, 1895, establishing as a public park, to be known as Lake Park, all the public lands then existing or which might thereafter be reclaimed, bounded on the north by the south line of Randolph street extended east,

on the west by the east line of Michigan avenue, on the south by the north line of Park Row, and on the east by the line established as a harbor line by the government of the United States, and, for the purpose of reclaiming and grading, authority was given to dump or place therein any proper filling material, under the supervision of the commissioner of public works.   This tract included the premises in question.   On October 2, 1895, the city adopted another ordinance, providing that the premises known as Lake Park should be extended east to said harbor line by enclosing and filling the shallow waters, for the purpose of providing suitable landing places for steam vessels and other craft employed in navigation. By these ordinances the city of Chicago extended Lake Park over these lands for the purposes of a park and landing places, and provided for filling the submerged portion by dumping filling material in the waters.  Counsel for complainants contend that the city had power to take the lands under the provision of the charter, by which the city has power to lay out, establish, open, extend and improve parks and public grounds.   It does have such power, provided it obtains the lands for the public use, but the charter power does not authorize a city to extend public parks on the property of private owners or of the State without the consent of the owner. An ordinance extending the public park over certain premises does not, of itself, confer title to such premises. The State, being the owner of the lands, might consent to their appropriation for the uses of a park, the same as any other owner; but the passage of the ordinance and the attempt to extend the park would not give a right to the lands for such uses without such consent.

The city, on July 27, 1896, by an ordinance, turned over all of Lake Park, except that part north of the north line of Monroe street extended east, to the South Park commissioners, and by the same ordinance provided as follows:  "All that portion of said Lake Front

Park lying east of the easterly line of the Illinois Central Railroad Company's right of way, and lying north of the north line of Monroe street extended to the east limits of said park at the outer sea wall, shall be and the same is hereby dedicated to the use of the local military company of the Illinois National Guard for the purpose of parade grounds and a site for armory and other like uses by said military organizations." The portion of the park which the city thereby attempted to dedicate to uses different and inconsistent with those of a park is partly in front of Fort Dearborn addition and partly in front of the addition of the State through its canal commissioners. The South Park commissioners accepted the park as turned over to them, by a resolution adopted October 14, 1896. After these proceedings the legislature passed an act approved June 11, 1897, reciting the passage of the ordinance by the city of Chicago dedicating the premises in question to the use of the local military companies of the Illinois National Guard for the purpose of parade grounds and a site for armory and other like uses by said military organizations, and enacting that a board of commissioners should be appointed for the purpose of planning and constructing a parade ground and armory on said grounds solely for such organizations and their successors of the Illinois National Guard. Section 5 of that act provided that the building authorized to be constructed, and all improvements made on the grounds, should remain the property of the State of Illinois, and that before any money should be drawn from the treasury for the purposes of the act, the city of Chicago should enter into a contract with the board of commissioners to the effect that the right of the State of Illinois to the use and occupation by said organizations of all the land to be utilized for said parade grounds and armory should be perpetual, and the title to all buildings, improvements and fixtures put thereon under the provisions of the act should be and remain in the State of Illinois. (Laws of 1897, p. 32.) The city of

Chicago, in pursuance of that act, entered into the required agreement on November 15, 1897, by which the city demised, released, conveyed and confirmed unto the State of Illinois the perpetual and exclusive right to the use and occupation of all that portion of the Lake Front Park lying east of the eastern line of the Illinois Central Railroad Company's right of way north of the north line of Monroe street extended to the east limits of said park at the outer sea wall, with all the buildings, improvements and fixtures to be constructed and put thereon. The legislature passed an act approved April 22, 1899, reciting the provisions of the act of June 11, 1897, for the contract by the city giving the right to the State to the use and occupation of the portion of Lake Front Park in question and the title to the buildings, improvements and fixtures, and also reciting that the said contract had been entered into by the city of Chicago as required by said act, and making a further appropriation for the expenses of forming the parade grounds and building the armory. (Laws of 1899, p. 29.) At the same session the legislature passed an act approved April 24, 1899, entitled "An act to convey and designating certain submerged lands known as 'Lake Front' for park purposes." This act recited that the legislature had been petitioned to name and designate, by act, the park which was making and about to be made upon the lake front, in the city of Chicago; that the title to the land, a part of which was yet submerged under the waters of Lake Michigan but the reclamation of which was contemplated and being then undertaken by the filling from the shore line, was still, as the legislature believed, in the State of Illinois; that the city of Chicago had transferred the possession, care, improvement and management of the said Lake Park to the South Park commissioners for the express purpose of establishing a public park and pleasure ground thereon, and that, the title not being vested in said board, the board was prevented and delayed from

carrying out and perfecting the plans necessary for the proper improvement and development of a public park on said lake front and in discharging all their obligations and duties in that behalf. The act provided that the land south of Randolph street, north of Park Row and east of Michigan avenue, including the premises in question, commonly known and designated as the "Lake Front," should be called, designated and known as "Grant Park." (Laws of 1899, p. 328.) Although the title of the act indicates a purpose to convey, there are no words of conveyance in the act. There is, however, an unmistakable recognition of the park as extended by filling from the shore line, for the purpose of a public park and pleasure ground. Section 1 of that act was amended by an act approved May 10, 1901, designating the land and submerged land bounded on the north by the north line of Monroe street produced east to the harbor line, on the east by the harbor line, south by Park Row, and west by the east line of Michigan avenue, as "Grant Park," and conveying to the park commissioners that part south of the north line of Jackson street. (Laws of 1901, p. 260.)

No interpretation can be put upon these acts except that the legislature assented to the act of the city extending Lake Park over the submerged lands to the outer sea wall, and recognized that it had granted to the city the privilege of filling from the shore line and making such extension for the uses of the park. And there has been no attempted revocation on the part of the State, or the assertion of an adverse right to reclaim the submerged lands and devote them to a different use than that of the park. The only rights which defendants claim are under the ordinance of the city purporting to devote a part of the public park to the uses of local military organizations, and the contract with the city that the use shall be perpetual and the improvements made on the ground shall remain the property of the State. These rights are asserted in recognition and subordination to

the claim of the city that the premises had been dedicated to the uses of a park. By the acts under which defendants are proceeding the legislature required from the city the contract in question, which is utterly inconsistent with any claim of right in the State to appropriate the land to other purposes than those of a park. In view of the contract with the city for the use and occupation of a part of the park as extended we do not see how defendants can deny its existence.

If the park were extended by natural accretions no one would deny that the whole would be subject to the same conditions and limitations annexed to the original dedication, and where the city has been permitted, as the owner in fee, to extend it by filling in the shoal waters along the shore line, we are unable to see how any different rule can prevail. In either case the extension grows upon the original park and becomes corporate with it and part of it,—in the one case by natural process, and in the other by artificial means, with the assent of the State.

In our opinion the decree was right, and it is affirmed.

*Decree affirmed.*