CITY OF NEW YORK, Appellant, *v.* THIRD AVENUE RAILWAY
COMPANY et al., Respondents.

Argued February 28, 1945; decided May 24, 1945.

*Ignatius M. Wilkinson, Corporation Counsel (Reuben Levy and Julius Isaacs of counsel), for appellant.* I. None of the uses of the city's filled-in waterfront land has any connection with any enterprise conducted on the adjoining upland. II. A municipality has a substantial right to use its filled-in land under water even though that land is subject to riparian rights; the municipality's interest in such property has substantial value. (*City of New York v. Wilson & Co., 278 N. Y. 86; Hedges v. West Shore R. R. Co., 150 N. Y. 150; Tiffany v. Town of Oyster Bay. 234 N. Y. 15; People v. Delaware and Hudson Co., 213 N. Y. 194; Harway Improvement Co. v. Partridge, 203 App. Div. 174, 236 N. Y. 563.*) III. The railway company filled in the city's land under water as the city's tenant and acquired no greater rights in the city's filled-in land than it had before the land was filled in. (*Tiffany v. Town of Oyster Bay, 234 N. Y. 15; Melton v. Fullerton-Weaver Realty Co., 214 N. Y. 571; Lacustrine Fer. Co. v. L. G. & Fer. Co. et al., 82 N. Y. 476.*) IV. Defendants' unauthorized appropriation of the city's land under water for purposes of storage and the operation of a coal business clearly exceeds the lawful exercise of the riparian rights appurtenant to the defendant railway company's adjoining upland. (*City of New York v. Wilson & Co., 278 N. Y. 86; Matter of City of New York, 168 N. Y. 134; Hinkley v. State of New York, 234 N. Y. 309; Barnes v. Midland R. R. Terminal Co., 218 N. Y. 91; Tiffany v. Town of Oyster Bay, 234 N. Y. 15; Matter of City of New York [Pier Old No. 49], 227 N. Y. 119; Hedges v. West Shore R. R. Co.,*

150 N. Y. 150; *People* v. *Steeplechase Park Co.*, 218 N. Y. 459; *Matter of City of New York* [*Neptune Avenue*], 254 App. Div. 690, 280 N. Y. 604; *Town of North Hempstead* v. *Gregory*, 53 App. Div. 350.)

*Alfred T. Davison* and *Addison B. Scoville* for Third Avenue Railway Company, respondent. I. No question survives for review by the Court of Appeals. II. Defendants' use of the city's land under water did not exceed their riparian rights. (*Sage* v. *The Mayor*, 154 N. Y. 61; *Hinkley* v. *State of New York*, 234 N. Y. 309; *Matter of Del Balso H. Corp.* v. *McKenzie*, 271 N. Y. 313; *City of New York* v. *Wilson & Co.*, 278 N. Y. 86; *United P. B. Co.* v. *Iroquois P. & P. Co.*, 226 N. Y. 38.) III. Appellant's arguments on this appeal are predicated on facts flatly contrary to the findings of fact of the trial court unanimously affirmed by the Appellate Division.

*James E. Kelliher* for Bradley-Mahony Coal Corporation, respondent. Defendant coal corporation has not exceeded the riparian privileges leased to it by the upland owner. (*City of New York* v. *Wilson & Co.*, 278 N. Y. 86; *Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15; *Matter of City of New York*, 168 N. Y. 134; *Sage* v. *The Mayor*, 154 N. Y. 61; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Burns Bros.* v. *City of New York*, 178 App. Div. 615, 232 N. Y. 523; *Vilias* v. *Featherson*, 94 App. Div. 259; *Matter of City of New York*, [*West 205th St.*] 240 N. Y. 68.)

DESMOND, J. The City of New York brought this action to recover from defendants the possession of certain lands formerly under water, title to which is in the City under ancient grants (see *Sage* v. *The Mayor*, 154 N. Y. 61), and for damages for use of such lands. The lands in question are outshore of the highwater line of the Harlem River and are in area about 53,000 square feet. About 12,000 square feet thereof have been left as a basin or slip — the rest was filled in by the defendant railway company or its predecessors, many years ago, out to the bulkhead line. Defendant Third Avenue Railway Company owns the adjoining upland; defendant Bradley-Mahony Coal Corporation is a tenant of the railway company as to part of the lands here involved, so that the two defendants are, unques-

tionably, in legal possession of the uplands, with all the rights of riparian proprietors on tide water. Unquestionably, too, the railway company, as riparian owner, possesses, as incident to its fee title to the lands above high water mark, rights to the use of the filled-in lands to which the City has title. The City argues, however, that the actual use made by defendants of the filled-in lands far exceeds that appropriate to their right of access to deep water, and their right of "wharfing out."

The action was tried twice, both times without a jury. After the first trial the court gave judgment decreeing that the City was owner of the outshore lands, but dismissing the complaint so far as it demanded possession and damages for use and occupation. The Appellate Division, First Department, reversed that judgment and ordered a new trial (264 App. Div. 193, 194). That court held that while the City could not maintain ejectment against the riparian owners, it did not follow that the City could not recover for use and occupation "to the extent that such use by the defendants exceeds their riparian rights". The Appellate Division's opinion on that first appeal suggested at least a doubt as to whether defendants had gone beyond their rights by putting permanent or semi-permanent structures on the made lands, formerly under water. In that connection the Appellate Division cited such cases as *Matter of City of New York (Neptune & Emmons Avenues)*, (280 N. Y. 604) and *People v. Steeplechase Park Co.* (218 N. Y. 459), to which cases we shall refer at another place in this opinion.

After the second trial the trial court again held for defendants, and the Appellate Division then affirmed without opinion, and this court granted leave to appeal here. The trial court's opinion after the second trial was that despite the Appellate Division's reversal on the first appeal, there remained open to the trial court this question: "To what extent, if any, does defendants' use of the property in question exceed their riparian rights?" The Trial Justice noted that some of the language in the Appellate Division's opinion on the first appeal might seem to have decided that question against defendants, but took the view that the extent of such use was a question of fact to be decided on the record on the second trial. The Appellate Division itself, by its affirmance of the judgment for defendants rendered on the second trial, seems to have agreed with the

trial court that the question of whether the upland owners had or not exceeded their rights was, on this record, a question of fact.

As found by the trial court on sufficient evidence, the uses made of the filled-in lands by defendants are these: they have erected and use thereon a small (14 x 14 feet) power house or " cable house ", two trolley tracks with poles and wires, also coal hoppers, conveyors, pockets, screener, scales and a small office. The trolley tracks are used by defendant railway company to carry on flat cars certain supplies, which are unloaded at waterside from barges or lighters. The railway company uses the " cable house " to transfer electric current, brought across the Harlem River by submarine cables, to land cables whence the current is transmitted to the trolley wires of the railway company. Sometimes the railway company's supplies are left lying on the filled-in lands for a time before they are carried away on its flat cars. The other structures or facilities on the filled-in lands (hoppers, pockets, conveyor, screener, scales and a small office) are used by defendant coal company in connection with its business: coal is unloaded from barges at the water's edge, handled in the hoppers and pockets and taken away on motor trucks. All materials brought to the scene by water and carried away across the filled-in lands are transported on trucks or flat cars which enter the filled-in lands from the railway company's uplands and leave by the same route. Indeed the only practicable access to the filled-in lands is over the railway's lands or from the Harlem River. None of the structures or facilities maintained by defendants on the filled-in lands are, apparently, of great size or value. Some of the photographs in the record show a large, substantial power house building, but the trial court found — and the City does not dispute — that this large building is, except for a small corner thereof, on the uplands. The City concedes that the small encroachment is not of importance here.

The trial court thought that the filling-in of the underwater lands was in substance the same as the building of a wharf out to deep water, by a riparian owner, and that all the activities of defendants, on and over the filled-in lands to which plaintiff City has title, though activities " numerous and of great magnitude ", are " incidents of the loading and unloading of water-

borne freight ''. That court cited *Matter of City of New York* (168 N. Y. 134, 143), and many other cases dealing with the right of riparian owners of access to navigable water, and with their right to construct wharfs, etc., to make the right of access useful for loading, unloading and transporting merchandise. It quoted from *Matter of City of New York* (*supra*, p. 146), as follows: '' The Harlem River as a public highway was open to them [the riparian owners], not alone as a means of getting to and from their own lands, but for all the purposes of traffic and communication to which such an artery of commerce may be devoted.'' We think the courts below were justified in holding as fact that the putting up and use by defendants of the small structures on the filled-in lands was incidental only to their reasonable enjoyment of their right to transport merchandise to and fro between the navigable water and their lands. Neither *Matter of City of New York* (*Neptune & Emmons Avenues*) nor *People* v. *Steeplechase Park Co.* (*supra*), both relied upon by the City, are to the contrary. Those cases went no further than to deny to the upland owners any right to use the filled-in foreshore for purposes so unrelated to commerce and navigation as the operation of a restaurant (*Neptune Avenue* case) or of roller coasters and similar amusement devices (*Steeplechase Park* case).

The City argues that the judgment below is erroneous and unfair to the City since, according to it, the judgment permits defendants to engage in extensive and continuous business activities on the City's lands. Such a conclusion can follow only from a view of the facts, different from that taken by the courts below. That view is that all the structures and activities of defendants on the filled-in lands constitute but methods and facilities for moving defendants' merchandise and supplies from deep water to the uplands. Such a view of the situation is a permissible one and so the question decided below was essentially one of fact, put beyond our reach by the Appellate Division's affirmance.

The courts below treated defendant railway company's filling in of the shallow water as equivalent to the construction of a wharf by a littoral owner. The City says that the right to '' wharf out '' does not, however, include the right to erect

buildings on the wharf. We see no reason for such a limitation, so long as the buildings themselves do not constitute such an appropriation of the foreshore as prevents appropriate public uses. In *Barnes* v. *Midland R. R. Terminal Co.* (see first appeal, 193 N. Y. 378, 385, 386, and second appeal, 218 N. Y. 91, 97) defendant had built a covered pier of such design that it barred the public from passing to and fro on a beach; this court's modification of the injunction allowed the covered pier to stand so long as open passageways underneath it were provided. There is nothing in the present record to show that defendant's buildings in fact interfere with any desired or contemplated public use of this foreshore. Defendants' use and occupation is of course, subject to the superior rights of the public (*Sage* v. *The Mayor, supra; Town of Brookhaven* v. *Smith,* 188 N. Y. 74, 87) but defendants' present use " does not affect navigation or any public right or interest " (*People* v. *Mould,* 37 App. Div. 35, 39, 42). " What form or shape or size the pier may take varies with use and necessity " (*Hinkley* v. *State of New York,* 234 N. N. 309, 318). The reasonable use of these lands by defendants in connection with commerce and navigation necessitates the maintenance of the small structures complained of. " The defendants have, simply, made their right of access practical " (*Town of Brookhaven* v. *Smith, supra,* 188 N. Y. at p. 87). " * * * the riparian owner's right of access to the navigable waters in front of his upland comprehends, necessarily and justly, whatever is needed for the complete and innocent enjoyment of that right " (same citation).

The City asserts that defendant coal company, leasing part of these lands from defendant railway company, has put its part of the lands under water to uses disassociated from any use of the upland. The coal company, says the City, is conducting a coal business on the City's lands and uses the railway company's uplands only for access to the filled-in lands. We think the record establishes that the coal company uses both upland and foreshore, since access to the latter is only through the former or from the Harlem River. Even if it were the fact that defendant railway company had leased to the coal company only the right to use the made lands, entirely apart from the uplands, such leasing would not be an illegal exercise by the railroad company of its rights as a riparian owner. (See

as to severability and alienability of riparian rights, Black's Pomeroy on Water Rights [1893 ed.], ch. 254; *Lawrence et al.* v. *Whitney et al.*, 115 N. Y. 410, 423; *United P. B. Co.* v. *Iroquois P. & P. Co.*, 226 N. Y. 38, 47; *Weems Steamboat Co.* v. *People's Co.*, 214 U. S. 345.)

We have not considered herein, because unnecessary to our decision, several other points urged by respondent.

The judgment should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, CONWAY and DYE, JJ., concur; THACHER, J., taking no part.

Judgment affirmed.