DOUGLAS S. BURNS, Appellant

v.

ALPHONSO FORBES

## No. 17,576

## United States Court of Appeals
### Third Circuit

## Argued January 31, 1969
## Decided June 25, 1969

*See, also, 412 F.2d 995*

RONALD H. TONKIN, ESQ. (JAMES, HODGE & TONKIN), Christiansted, St. Croix, Virgin Islands, *for appellant*

GEORGE N. FOSTER, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellee*

Before MARIS, FREEDMAN and ALDISERT, *Circuit Judges*

### OPINION OF THE COURT

MARIS, *Circuit Judge*

This is an appeal by the plaintiff from a judgment of the District Court of the Virgin Islands which affirmed on appeal a judgment of the Municipal Court dismissing the plaintiff's action for an injunction to restrain the defendant from entering upon land alleged to be owned by the plaintiff and maintaining a fence thereon between the land in controversy and other land owned by the plaintiff.

It appears that in 1949 the defendant conveyed to the plaintiff a parcel of land known as Parcel No. 8 of Altona, East End Quarter A, St. Croix, containing 3.812 acres, which was bounded on the north and west by the Altona Lagoon, a tidal lagoon connected with the sea. Mangrove trees grew along the margin of the lagoon at this point, many of them growing in the water of the lagoon and forming an extensive mangrove swamp. In 1965 the plaintiff for the purpose of eliminating a mosquito problem arranged with a contractor to crush the mangrove trees on the lagoon in front of his property and fill the area where they had been growing with earth. This work was completed at the end of February 1966 and the area formerly occupied by the mangrove swamp became fast land. Thereafter the defendant, whose remaining land adjoined the plaintiff's land on the south and on its western side also fronted on the Altona Lagoon, entered upon the newly filled land and erected a barbed wire fence across it in a general northerly direction. The fence thus erected cut off

access to the newly filled land from the plaintiff's Parcel No. 8 and thereby cut off his access to the lagoon. The present suit by the plaintiff in the Municipal Court followed.

It was the plaintiff's contention that the shore line of the Altona Lagoon at the place where his land fronted upon it had moved out into the lagoon by natural accretion and reliction between 1949 and 1965 so as to include the entire area which he had cleared and filled with earth in 1966. Asserting that he was the owner of the filled land, he urged that the defendant had no right to enter upon it or to erect a fence cutting his upland off from it and from access to the lagoon. The defendant, on the other hand, contended that the accretion and reliction claimed by the plaintiff had not taken place but that the land in question was artificially created by the plaintiff by filling with earth what was still in 1965 a part of the bed of the lagoon. The defendant asserted that the plaintiff, therefore, had no title to the newly filled land or any standing to object to the defendant's entering it and erecting the fence in controversy.

While the evidence was conflicting there was sufficient evidence to support the finding which the Municipal Court made that the plaintiff "caused the mangrove trees to be crushed and buried with fill, thereby creating new land." Thus a witness for the plaintiff admitted that the mangrove trees grew in the water out into the lagoon and that by the filling which was done the plaintiff gained land. The judgment of the Municipal Court which the court based upon its finding on this point was upheld by the District Court on appeal. On this record we cannot hold that finding to be erroneous.

Where, as here, tidewater is the boundary of land in the Virgin Islands, the title of the grantee of the land appears to extend to the low-water mark at the time

of conveyance[1] and will include those portions of the bed of the adjacent waters which may subsequently become fast land above low-water mark by gradual and imperceptible accretion of alluvium to the littoral land or by reliction.[2] And it has been held that an upland owner acquires title to accretions to his land created artificially by the acts of third persons in which he has no part.[3] But the doctrine of accretion does not extend to land reclaimed by the owner of the adjoining land through filling in land under water and making it dry.[4] In the present case, however, it is clear from the finding of the Municipal Court that the new land was added to the plaintiff's littoral land as the result of his own acts. In the absence of evidence to the contrary, and there was none in the present case, it will be presumed that the bed of the Altona Lagoon, a tidal arm of the sea, including that portion reclaimed by the plaintiff, is owned by the United States.[5] It follows that the land which the plaintiff has

[1] See 28 V.I.C. § 47(5). But see footnote 5, infra.

[2] Jones v. Johnston, 1856, 59 U.S. (18 How.) 150, 155–156; Jefferis v. East Omaha Land Co., 1890, 134 U.S. 178, 196; Gubser v. Town, 1954, 202 Ore. 55, 273 P.2d 430; 4 Tiffany, Real Property, 3d ed., §§ 1219, 1220; 6 Powell on Real Property §§ 983–985; III American Law of Property §§ 15.26–15.29; 56 Am. Jur. Waters (1st ed.) §§ 476–485; 65 CJS Navigable Waters § 82(1).

[3] St. Clair v. Lovingston, 1874, 90 U.S. (23 Wall.) 46, 68; Brundage v. Knox, 1917, 279 Ill. 450, 117 N.E. 123, 127–128; Jackson v. United States, 9 Cir. 1932, 56 F.2d 340; Nordale v. Waxberg, D.Ct. Alaska 1949, 84 F.Supp. 1004; Michaelson v. Silver Beach Improvement Ass'n, Inc., 1961, 342 Mass. 251, 173 N.E.2d 273, 91 A.L.R.2d 846; Harrison County v. Guice, 1962, 244 Miss. 95, 140 So.2d 838; Beaver v. United States, 9 Cir. 1965, 350 F.2d 4, 10–11; 4 Tiffany, Real Property, 3d ed., § 1223; 56 Am. Jur. Waters (1st ed.) § 486; Annotation 134 A.L.R. 467. But see Sage v. Mayor, etc., of City of New York, 1897, 154 N.Y. 61, 47 N.E. 1096; Patton v. City of Wilmington, 1915, 169 Cal. 521, 147 P. 141.

[4] Saunders v. New York Cent. & H.R.R. Co., 1894, 144 N.Y. 75, 38 N.E. 992, 993–994; Revell v. People, 1898, 177 Ill. 468, 52 N.E. 1052; Bliss v. Ward, 1902, 198 Ill. 104, 64 N.E. 705, Black v. American International Corporation, 1919, 264 Pa. 260, 107 A. 737; Annotations 134 A.L.R. 472: 91 A.L.R. 2d 860; 56 Am. Jur. Waters (1st ed.) § 486; 65 CJS Navigable Waters, § 82(2).

[5] "Under the Convention of 1916 between Denmark and the United States the King of Denmark ceded to the United States all 'wharves, ports, harbors, . . ., and all other public property of every kind or description' belonging to Denmark in the West Indies. 39 Stat. 1707, 1 V.I.C. p. 28.

reclaimed from the bed of the lagoon, does not belong to him but is presumably still the property of the United States which holds it for the benefit of the public generally.

 The right of access to the water in front of his land is the fundamental riparian right which the owner of littoral land enjoys.[6] For it makes possible the exercise of his rights to navigate, to fish, to bathe and to use the water for other purposes. The right of access is, therefore, one of which the littoral owner is not lightly to be deprived. In order to protect the right of access and to facilitate its exercise the owner of littoral land has the right at common law to erect piers and docks on the submerged public land beyond the water line and to wharf out over it, subject to government regulation and control

—————

This cession undoubtedly included the submerged tidal lands surrounding the islands within the three mile limit. By section 4(a) of the Organic Act of 1936 all property thus acquired from Denmark was placed under the control of the Government of the Virgin Islands except that which had been reserved by the United States for public purposes. 48 U.S.C.A. § 1405c(a); 1 V.I.C. p. 48. By the Acts of July 3, 1930, § 8, 46 Stat. 948, and July 1, 1932, § 1, 47 Stat. 565, sections 9 to 20 of the River and Harbor Act of 1899, 33 U.S.C.A. §§ 401, 403, 404, 406, 407, 408, 409, 411–416, 418 and 502, had been made applicable to the Virgin Islands and the navigable waters thereof. 48 U.S.C.A. § 1399. It would appear that the effect of these enactments was to reserve from the property, the control of which was granted to the Government of the Virgin Islands by section 4(a) of the Organic Act of 1936, the navigable waters surrounding the Virgin Islands and the submerged lands under those waters. However that may be, the Congress clearly assumed that these lands were property of the United States when in 1963 it enacted the Territorial Submerged Lands Act, under which the Secretary of the Interior is authorized, upon request of the Governor of the Virgin Islands, to convey to the Government of the Virgin Islands the title of the United States in particular tracts of tidelands, submerged lands or filled lands in or adjacent to the territory. 48 U.S.C.A. § 1701. There was no evidence here that such a conveyance has been made of the bed of the Altona Lagoon and we are not called upon to pass upon the question of the ownership of that land in this case, in which neither the United States nor the Government of the Virgin Islands is a party. Nor are we called upon to decide whether the title of the United States (or the Government of the Virgin Islands if it in fact holds title) extends to the land lying between the high and low water marks or whether such tidelands belong to the owners of the adjoining riparian lands because they belonged to them under Danish law or for any other reason. See Gibbs, Submerged Lands, 2 V.I. Bar Journal 1 (1968)."

[6] Hughes v. Washington, 1967, 389 U.S. 290, 293–294. See also 2 Tiffany, Real Property, §§ 659, 660; III American Law of Property § 15.35.

and with due regard to the rights of the public and adjoining land owners.[7] The rights of a littoral owner in the public waters adjacent to his land are thus more extensive than those of the public generally.[8] In the present case the plaintiff removed and filled a mangrove swamp in front of his land which involved a mosquito problem and undoubtedly interfered with the enjoyment of his right to have free access to the adjacent water across the whole breadth of his lagoon frontage. We think that this action was equivalent to that of a riparian owner who builds a wharf out into the water along the margin of his land to facilitate the exercise of his right of navigation, fishing and bathing. We accordingly hold that the plaintiff has the right, in the nature of a franchise,[9] to use the filled land for the purpose of access to the lagoons, subject, of course to such regulations as the United States, as owner of the filled land, may make for the protection of the public interest. Whether such regulations could lawfully go so far as to restrict or wholly prohibit the plaintiff from using the filled land as a way of access to the lagoon we need not now decide[10] since it is not suggested that any government regulation exists with respect to the Altona Lagoon. We note, however, that there is authority for the proposition that the owner of riparian upland who has filled the foreshore under the mistaken belief that he owns it, but actually without authority, so that it retains its legal character as land under water owned by the state, nonetheless retains the same rights in and across it as if no filling had taken place, and that his rights as a riparian

---

[7] United States v. River Rouge Improvement Co., 1926, 269 U.S. 411, 418–419; City of New York v. Third Ave. Ry. Co., 1945, 294 N.Y. 238, 62 N.E.2d 52, 54–55.

[8] State v. George C. Stafford & Sons, 1954, 99 N.H. 92, 105 A.2d 569, 573.

[9] Shorehaven Golf Club, Inc. v. Water Resources Com'n, 1959, 146 Conn. 619, 153 A.2d 444, 446–447.

[10] But see Port of Seattle v. Oregon & Washington R. Co., 1921; 255 U.S. 56; City of Newport Beach v. Fager, 1940, 39 Cal. App.2d 23, 102 P.2d 438.

owner continue.[11] However that may be, it is clear that the defendant, who has established no right or title to the filled land, may not cut off plaintiff's access to the lagoon through that land by maintaining the fence which he has erected between it and plaintiff's upland.

The judgment of the District Court will be reversed and the cause remanded to the Municipal Court with directions to vacate its judgment and to enter a judgment enjoining the defendant from maintaining a fence between the plaintiff's Parcel No. 8 of Altona, and the filled land to the west of it, and dismissing the defendant's counterclaim.

---

[11] Tiffany v. Oyster Bay, 1922, 234 N.Y. 15, 136 N.E. 224, 24 A.L.R. 1267.