Belknap,
No. 4282.

STATE *v.* GEORGE C. STAFFORD & SONS, INC.

Argued March 3, 1954.

Decided May 27, 1954.

*Louis C. Wyman,* Attorney General, *George F. Nelson,* Assistant Attorney General (*Mr. Nelson* orally), for the State.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the town of Meredith, as an intervening plaintiff.

*Tilton & Tilton* (*Mr. Robert P. Tilton* orally), for the defendant.

KENISON, C. J.  It is a basic proposition which has become well

settled by usage, statute and judicial decision that lakes and great ponds in New Hampshire belong to the public and are held in trust by the State for public use. R. L., *c.* 182, *ss.* 17, 18; *Concord Company* v. *Robertson,* 66 N. H. 1; *Percy Summer Club* v. *Welch,* 66 N. H. 180; *State* v. *Sunapee Dam Co.,* 70 N. H. 458; *Whitcher* v. *State,* 87 N. H. 405. Meredith Bay in Lake Winnipesaukee, which is one of the boundaries of the lands owned by the parties to this dispute, is a part of one of the public waters of the State. *Musgrove* v. *Cicco,* 96 N. H. 141; *Rothrock* v. *Loon Island,* 96 N. H. 421. While the title of the State to the bed of the lake extends to the natural high water mark (*Taggart* v. *Jaffrey,* 75 N. H. 473), the defendant and other littoral owners have rights which are more extensive than those of the public generally. *Willis* v. *Wilkins,* 92 N. H. 400. Such littoral owners have the right to erect wharves and other structures into the lake which are superior to the rights of those who have only the rights of a member of the public. *Dolbeer* v. *Company,* 72 N. H. 562. Littoral owners may use the lakes and public waters in front of the property for recreational and other similar purposes in a more extensive manner than those who enjoy the rights to use the lake and public waters only as members of the public. *Hoban* v. *Bucklin,* 88 N. H. 73.

Although littoral owners have extensive rights in public waters, they are always subject to the paramount right of the State to control them reasonably in the interests of navigation, water storage and classification, health and other public purposes. *Richardson* v. *Beattie,* 98 N. H. 71; *State* v. *Hutchins,* 79 N. H. 132. Revised Laws, chapters 181, 182, 266, 267; Laws 1947, chapter 183 as amended. Since the State's rights in land and waters are not always enforced and protected with the same alacrity as private rights (*State* v. *Company,* 49 N. H. 240, 252), the Legislature has provided that no person can acquire title to State lands by adverse possession. R. L., *c.* 411, *s.* 6. For the same reason it has been decided that the State does not forfeit or lose its rights to public lands and waters by laches, estoppel or waiver. *State* v. *Hutchins, supra; Trustees &c. Academy* v. *Exeter,* 90 N. H. 472, 495; *St. Regis Co.* v. *Board,* 92 N. H. 164, 169. Nor is the State estopped to assert public rights if its officers acted without authority. *Ham* v. *Interstate Bridge Authority,* 92 N. H. 268; *State* v. *Cote,* 95 N. H. 428. "It has been expressly decided that a state is not estopped by the unauthorized acts of its officers." *Smith* v. *Epping,* 69 N. H. 558, 560.

There is authority that a littoral or riparian landowner may add "made or filled land" (*Watson* v. *Horne,* 64 N. H. 416, 417) to his property assuming, of course, that it is a reasonable use of his property and not injurious to neighboring property or the public rights of the State. See *Cheever* v. *Roberts,* 82 N. H. 289. This right has sometimes been referred to as "a reasonable private right of using this public property." *Dolbeer* v. *Company,* 72 N. H. 562, 564. Even where the littoral owner limits the made or filled land to the shoreline of his own abutting property, he assumes the risk that his construction of a "wharf . . . or other thing, below the water's edge, being found to be unreasonable, and his structure being an abatable nuisance." *Concord Co.* v. *Robertson,* 66 N. H. 1, 20. It follows that the littoral owner has no right to build land or structures out from the lake frontage of his property if the same will unreasonably interfere with the paramount rights of the public to use the lake. To build them along the frontage of adjoining land, whether title to such land is privately or publicly held, would not only be clearly unreasonable but beyond the rights of the littoral owner.

The defendant's claim to title to the filled-in area stands or falls on the authority of the Highway Commissioner to grant it to him. The defendant received no conveyance to the filled-in area and, in any event, the conveyance to be binding required approval of the Governor and Council which was never obtained. R. L., c. 90, *pt.* 10, *s.* 11, as inserted by Laws 1945, *c.* 188. Although the Highway Commissioner had broad powers over highway matters which he exercised on behalf of the State (*Id., s* .7) the sale, conveyance and lease of property acquired for highway purposes required the approval of the Governor and Council. *Id., s.* 11. The same rule applies to surplus property which is not immediately needed for the right of way proper. *Id., pt.* 7, *s.* 2. While this land transaction was entered into honestly, openly and in good faith, it could not be legally effective to transfer property from the plaintiff to the defendant. *State* v. *Hutchins,* 79 N. H. 132. The answer to question one is "no."

Question three is whether on the evidence in this case a littoral owner on a great pond may acquire fee simple title to additional dry land by filling up the bed of the great pond below the natural high water mark. For reasons hereinafter indicated the answer must be "no." An affirmative answer would result in serious and extensive encroachments on the public rights in public waters of the

state, would place a premium on trespasses against the public right and encourage one littoral owner to develop his shore frontage at the expense of others. The whole history of the development of lakes and great ponds in this state militates against the allowance of such commercial developments without legislative sanction. *Dana* v. *Craddock,* 66 N. H. 593; *State* v. *Welch,* 66 N. H. 178; *State* v. *Sunapee Dam Co.,* 70 N. H. 458; R. L., c. 267, ss. 47-50; Laws 1949, c. 307. It is true that the filled-in area eliminated the building of rip-rap along a portion of the lake shore otherwise necessary to hold the bed of the highway in place. While the fill was thus connected with the highway project and improved the general appearance of the immediate vicinity, it does not follow that the land so created became the private property of the defendant. We know of no decision which allows a littoral owner to acquire fee simple title to fill deposited in a lake and thus accomplish its transfer from the public ownership to private ownership by grading and improving the filled land. 1 Powell, Real Property *s.* 160, *pp.* 624-625 (1949). If this was allowed it would be contrary to the statutory provisions punishing trespass on State lands and prohibiting private owners from acquiring title to State lands by adverse possession. R. L., c. 411, ss. 5, 6.

The answer to question two cannot be a categorical "yes" or "no." The exact point at which Cram Mill Brook ended and Lake Winnipesaukee began is difficult to ascertain. The State was not only the owner of public rights in Lake Winnipesaukee but owned certain land on the westerly side of the lake by virtue of the deed from Meredith Linen Mills and as to the defendant was an adjoining owner within the meaning of R. L., c. 269, ss. 27-29. While the defendant could not have compelled the State to determine the boundary line (*Rothrock* v. *Loon Island,* 96 N. H. 421), the State through the Governor and Council would have authority to settle a boundary dispute. The effect of this might well be to establish title in fee in the defendant to a minor portion of the filled-in area because of the uncertainty as to the location of the true boundary where the properties adjoin. *Cf. Bailey* v. *Rolfe,* 16 N. H. 247, 251, 252. It would not be possible to give the defendant title in fee to the whole of the area since the statute furnishes no authority for such procedure.

While we have answered the questions transferred there remains the further consideration whether there is any equitable solution to this case which will not deprive the defendant of its shoreline.

The Court has found that the defendant has expended considerable money improving the property and that this was done openly, honestly and in good faith and that the "equities weigh heavily in its favor." Possible equitable solutions which may be considered by the parties and the Court include (1) legislative action (*cf.* Laws 1951, *c.* 280); (2) settlement of the boundary dispute by the Governor and Council and the defendant pursuant to R. L., *c.* 269, *ss.* 27-29; or (3) the one that was adopted in the somewhat analogous case of *Tiffany* v. *Oyster Bay*, 234 N. Y. 15.

As we understand the exhibits the defendant formerly had approximately one hundred feet of shore frontage while the State had two hundred twenty feet. If the defendant is to receive easement rights in the new shoreline in order to preserve the former proportions it would be entitled to ten thirty-seconds of the new two hundred sixty foot shoreline or eighty-one feet. This would involve establishment of a line from the dividing point on the new shoreline, to the defendant's southwesterly bound where the thread of the brook formerly ended and the lake began. The State would continue to hold in fee simple the area which was formerly the bed of the lake, subject to the special littoral rights of the defendant in so much thereof as lies between the portion of the new shoreline designated for the defendant's use, and the former shoreline of the land owned by it in fee. *Tiffany* v. *Oyster Bay, supra.* The rights would include the privilege to cross and recross the area for the purpose of using the frontage along the eighty-one foot section to build a wharf, boathouse or other similar structure and to exercise thereon the common privileges of littoral owners. *Whitcher* v. *State,* 87 N. H. 405, 409. This method of dealing fairly with changed conditions on public waters finds some support in *Watson* v. *Horne,* 64 N. H. 416, 417.

*Remanded.*

All concurred.