Belknap
No. 6563

DORIS E. McLOON

v.

M. JOSEPH COLLINS AND RITA P. TAYLOR

March 29, 1974

*Orr & Reno* and *Richard B. Couser (Mr. Couser* orally) for the plaintiff.

*James D. O'Neill,* by brief and orally, for the defendants.

DUNCAN, J.   By this bill in equity the plaintiff seeks to determine the boundary between adjoining premises of the parties on Lake Winnipesaukee in Alton, and the ownership of a wharf or pier projecting into the lake in the vicinity of the common boundary. The plaintiff also seeks to compel removal of a fence constructed diagonally across the wharf by the defendants, to enjoin future interference with the plaintiff's rights in the wharf, and to recover damages for past interference and costs. Trial was before a Master *(John P. Chandler,* Esq.) in June 1969. The parties filed requests for findings and rulings, and on January 9, 1970, the master filed his report. The parties duly filed objections to the report, including objections to the granting and denial of requests for findings and rulings. Later, in February 1970, the defendants moved for rehearing, and for an opportunity to present additional evidence. These motions and the objections to the report were referred to the master, who heard the parties on June 29, 1970. The defendants then moved to take the deposition in Florida of Clara Holden, the survivor of the plaintiff's two grantors who were also predecessors in title of the defendants. The master recommended by supplementary report that the motion to take the deposition be granted. His report was approved by the Superior Court *(Keller,* C.J.) on February 2, 1971. At the same time the court also entered the following order: "The time for filing a proposed reserve case by either side

is to be measured from the final report of the Master after the depositions have been submitted to him." The master's supplementary report approved on February 2, 1971, recommended denial of the objections and motions filed in January 1970, and of the defendants' motions for rehearing and to produce additional evidence filed in March 1970 all of which was likewise approved by the Superior Court (*Keller*, C.J.) on February 2, 1971, subject to the exceptions of the parties.

In September 1971, the defendants moved for rehearing, or amendment of the master's report, based upon the testimony of the common grantor by the deposition taken in June 1971. In January 1972, the defendants filed a motion for rehearing with supporting affidavits of the defendant Collins alleging newly discovered evidence concerning the location of a boundary mark.

On February 14, 1972, the master filed a second supplementary report recommending that the defendants' motions of September 1971 and January 1972 be denied. The defendants' objections and exceptions to this report were heard by the Superior Court (*Dunfey*, J.) and on April 4, 1972, the court denied the defendants' motion for rehearing. All questions of law presented by the exceptions to the findings and rulings of the master were reserved and transferred by *Dunfey*, J., on July 17, 1972.

The parties own adjoining lots facing northeasterly toward Lake Winnipesaukee, in a subdivision of the shore front. In 1960, John and Clara Holden, then owners of two adjoining lots, conveyed to the plaintiff McLoon the westerly part of their westerly lot, including approximately three-fourths of the lake frontage thereof, by deed which described the disputed boundary, and the boundary at the lake frontage, as follows: "thence running north by other land of the Grantors a distance of 156.3 feet, more or less, to an iron pin at the shore of Lake Winnipesaukee, thence running west along said Lake a distance of 129 feet, more or less, to an iron pin at the point of beginning." The description also provided: "The present heavy stone breakwater and adjacent section of pier to be included in said property."

In 1965, the Holdens conveyed their easterly lot and the balance of the westerly lot to Richard and Dorothy Ashley,

who in turn conveyed this enlarged lot to the defendants in 1966.

The boundaries of the original lots, other than the disputed division line, are not in question. The dispute relates to the division line created in 1960.

The disputed wharf is the second of three parallel wooden structures extending northeasterly into the lake within a distance of about 55 feet along the shore front. Each structure is approximately 7 to 8 feet in width. The westerly structure appurtenant to the McLoon lot, parallels and is supported along its westerly edge by the "heavy stone breakwater", which faces northwest and serves to shelter all three structures. There is docking space of approximately 10 feet between the breakwater wharf and the disputed middle wharf. The disputed wharf is connected to the breakwater wharf at the shoreline, and there was evidence that it was similarly connected at the time when the deed to McLoon was given. The disputed wharf is the only wharf having lake water on both sides. The space between the disputed wharf and the easterly wharf, appurtenant to the Collins' land, is approximately 20 feet. The latter wharf forms a right angle which encloses a patio of crushed rock between the planking and the shore. The middle wharf and the easterly wharf both project from a concrete retaining wall marking the waterline between them.

The middle wharf is located in the area of the littoral terminus of the disputed boundary line. Prior to suit, the defendants caused a solid six-foot fence to be erected upon this wharf, running diagonally across it from its southeasterly corner to its westerly edge, out over the water, thereby blocking access to the end of the wharf from the McLoon lot. Additionally, they caused a triangular addition to the wharf to be constructed at its southeasterly junction with the concrete wall, to facilitate access to the wharf on the easterly side of the fence.

The plaintiff asserts that the common boundary is a line running from a monument which undisputedly marks the parties' common corner at the rear of their lots to an iron pipe 8 feet back from the middle wharf. A projection of this line through the iron pipe to the concrete retaining wall

falls just east of the shore end of the middle wharf. Hence if this is the true line, the disputed wharf originates entirely from the plaintiff's side of the dividing line. If the line is further projected over the lake across the wharf, it runs nearly parallel to and within a foot or two westerly of the fence erected by the defendants.

Notwithstanding the fact that the defendants located the fence in this position they maintain that the boundary is a line which at the retaining wall falls some 10 feet west of the line claimed by the plaintiff. If projected into the lake, the line claimed by the defendants would place a major part of the wharf opposite the defendants' land.

The superior court approved the master's determination that the boundary line is where the plaintiff claims it to be. As found by the master the line was that shown as a "Property Line" on plaintiff's exhibit 10, passing through both the iron pin near the wharf, and a "drill hole" at the easterly edge of the wharf. Moreover, the deed to the plaintiff conveyed "the present heavy stone breakwater and adjacent section of pier". The master's finding and ruling that the "adjacent section of pier" included the middle wharf is supported by the evidence.

The location of the boundary line was a question of fact for the master, and his findings were warranted by substantial evidence. *Leigh v. LaPierre,* 113 N.H. 633, 312 A.2d 699 (1973); *Sheris v. Morton,* 111 N.H. 66, 276 A.2d 813 (1971); *Rautenberg v. Munnis,* 108 N.H. 20, 22, 226 A.2d 770, 772 (1967); *Pike v. Hartford,* 102 N.H. 135, 152 A.2d 602 (1959). The evidence included the testimony of the surveyor who placed the iron pins relied upon by the plaintiff. He testified that when the new line was established by the Holdens and the plaintiff, he was told to set the pin which is near the wharf as a boundary monument, and that the distance from this pin as he found it at the time of trial, to the monument at the northwesterly corner of the plaintiff's lake frontage was almost precisely the 129 feet called for by the plaintiff's deed.

The defendants contend that since the plaintiff's deed describes the lake front boundary of the McLoon land as "along said lake a distance of 129 feet more or less", the

measurement must be made along the shoreline rather than from pin to pin. There was testimony that measurement of a shoreline is difficult and unreliable, and that measurements consequently are commonly made between monuments a safe distance from the shore. Moreover a measurement of 129 feet along the shoreline as urged by the defendants would result in the failure of the plaintiff's boundaries to close by a distance of 11 feet even if the periphery of the breakwater were ignored.

The defendants also contend that the master's findings that the middle wharf is the property of the plaintiff operates to deprive them of their rights as littoral owners. Lake Winnipesaukee is one of the public waters of the State. *State v. Stafford Co.,* 99 N.H. 92, 105 A.2d 569 (1954). As there pointed out, "littoral owners have the right to erect wharves and other structures into the lake which are superior to the rights of those who have only the rights of a member of the public." *Id.* at 97, 105 A.2d at 573. *See also Hartford v. Gilmanton,* 101 N.H. 424, 428, 146 A.2d 851, 854 (1958); *Hoban v. Bucklin,* 88 N.H. 73, 87-88, 186 A. 8, 11 (1936).

The master found that as common owners of two lots the Holdens intended by their deed to the plaintiff to subdivide the frontage and to "subject one part of it to a servitude or easement benefitting the other, in the form of a physical limitation on full access to the lake's waters." In consequence, the disputed wharf and the right to maintain it were conveyed to the plaintiff with her land in derogation of littoral rights of the land retained by the Holdens. RSA 477:26; *see Hartford v. Gilmanton,* 101 N.H. 424, 146 A.2d 851 (1958). Thus the interest later conveyed to the defendants was burdened with a corresponding limitation so that they may not interfere with maintenance and use of the wharf by the plaintiff. *Hayes v. Moreau,* 104 N.H. 124, 180 A.2d 438 (1962).

Finally, the defendants strenuously assert that they were deprived of rights under both statute and rule of court to have the second supplementary (and final) report of the master subjected to consideration and approval or disapproval by the superior court, prior to transfer of the reserved case to this court. The master's second supplementary report was filed on February 14, 1972. It related that the master had

considered the deposition of the grantor Clara Holden, and other materials submitted by the parties, and recommended denial of both of defendants' motions for rehearing, one relying upon the deposition, the other upon affidavit of the defendant Collins. Thus the report and the defendants' objections and exceptions thereto were before the court when the parties were heard by *Dunfey*, J., and the order of April 4, 1972, was entered on the most recent motion of January 10, 1972, denying the same. If this order did not by inference approve the final report of the master, the parties continued to be subject to the order of February 2, 1971, that the time for filing a reserved case would be measured "from the final report of the master after the depositions have been submitted to him."

Neither the statute (RSA 519:9 *et seq.*) nor the rules of the superior court required the procedure sought by the defendants. In point of fact, rule 79, adopted January 21, 1972, approved by this court on February 4, 1972, and effective on April 4, 1972, clearly provided that the report of a master or referee "will be presented to the Presiding Justice for his order and *thereafter* sent to counsel who shall preserve their rights as though the case were originally heard by a Justice of the Superior Court". (Emphasis added.) RSA 491:App. R. 79 (Supp. 1973). If the prior rule 70 (RSA 491: App. R. 70) implied a different procedure, it had been waived by the order of the superior court entered on February 2, 1971. *See Stiles v. Dube,* 106 N.H. 339, 211 A.2d 402 (1965).

We find no error in the master's recommendation that the defendants' motions for rehearing be denied. *Rautenberg v. Munnis,* 109 N.H. 25, 241 A.2d 375 (1968). A careful review of the record in this prolonged litigation discloses no error, and the order in this court is

*Defendants' exceptions overruled.*

All concurred.