Hillsborough-northern judicial district
No. 97-912

BENJAMIN AND ROSEMARY BREWSTER

v.

TOWN OF AMHERST & a.

December 3, 1999

*McNeill & Taylor, P.A.*, of Dover (*Malcolm R. McNeill, Jr.* and *Lynne M. Dennis* on the brief, and *Mr. McNeill* orally), for the plaintiffs.

*Drescher & Domko, P.A.*, of Milford (*William R. Drescher* on the brief and orally), for the defendants.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Nashua (*John V. Dwyer, Jr.* and *Rolf E. Goodwin* on the brief, and *Mr. Dwyer* orally), for the intervenors, J. Peter de Bruyn Kops & a.

THAYER, J. The plaintiffs, Benjamin and Rosemary Brewster, appeal a decision of the Superior Court (*Barry*, J.) affirming the revocation of a site plan approval, *see* RSA 676:4-a (1996), by the defendants, the Town of Amherst and the Amherst Planning Board (board). We affirm.

In 1991, the plaintiffs purchased a 57.2-acre parcel located along the Souhegan River. Approximately two acres are developable, but much of the parcel is located in a flood plain and contains wetlands. All but a small portion of the parcel is located in a residential-rural zone, and significant portions are located within four overlay districts that further restrict the property's use. These overlay districts are the flood plain conservation district, the wetland conservation district, the watershed protection district, and the aquifer protection district.

In 1992, the plaintiffs sought approval to build a residence and a soccer training center on their property. The town's planning director denied the request, finding that the plan did not conform to the rural-residential zoning requirements. The plaintiffs then sought a variance to develop a soccer camp on the site, which the Amherst Zoning Board of Adjustment denied.

The plaintiffs then sought approval for development of a soccer facility. In July 1993, the plaintiffs created a non-profit organization

to conform to the town's zoning bylaws, which permit additional non-profit uses. After two years of numerous extensive public hearings, and exhaustive review by the board, as evidenced by a 1,200 page record, the board approved the project in June 1995. The final approval permitted eight outdoor soccer fields, a 24,200 square foot field house, and 553 permitted parking spaces, including six bus parking spots. The field house includes an indoor soccer field, locker rooms, showers, bathrooms, a meeting room, a weight training room, a function room, a snack bar for fifteen persons, and room for catered banquets or meals for up to fifty participants. Under the terms of the approval, the plaintiffs would lease the facility to the non-profit organization. The board rejected the plaintiffs' request to use the premises for overnight accommodations, a restaurant, a sports and souvenir shop, and as a general banquet facility. The plan was approved provided that six pages of additional conditions were satisfied, including, *inter alia*:

> Except as specified under "Tournaments" below, the outdoor fields may be used from 8am to 9pm Tuesday through Saturday, and 9pm to 4pm Sundays, with a maximum 350 people on-site at any one time. No use is permitted on Mondays or during "off hours."
>
> . . . .
>
> Wetlands Board Permit 94-00347 includes 17 site-specific conditions to minimize impacts due to wetland use. . . .
>
> The building must be evacuated in the event of flooding and high water alarms must be installed.
>
> Fields # 1, 2, 5, & 8 may not be used during high water/wet conditions, and no wetland area shall be crossed by automobiles, vehicles or machinery when utilization will result in rutting of wetland soil.
>
> Fields must be visibly posted/flagged after treatment with pesticides for a length of time appropriate to the chemicals used.
>
> Surface water monitoring must be done according to the following schedule . . . .
>
> . . . .
>
> Portable toilets as needed for the number of people on the site will be placed appropriately.

All equipment and material shall be removed from wetlands area following use. All equipment, materials and toilets will be installed, stored and maintained so as not to pose a hazard during high water periods or be removed from the 100 year flood plain during flood events.

No off-site parking will be allowed on Stearns Road per action of the Amherst Board of Selectmen.

On-site traffic control is required for tournament events. . . .

The facility was further restricted to operation between April 1 and November 30 of each year. The plaintiffs were permitted to conduct six soccer tournaments in the first year of operation, and eight tournaments in each succeeding year. Generally, the site plan required the facility, on weekends following tournaments, to be closed the same number of days as the tournament had lasted on the preceding weekend. The plaintiffs were also required to inform the town of its schedule of tournaments and closed weekends by April 1 of each year.

Following site approval, the plaintiffs' neighbors, including the intervenors, frequently complained to the town regarding violations of the site plan conditions, including play during restricted hours, illegal parking, and equipment and portable toilets remaining on the field during flood and snow conditions.

On April 3, 1996, the planning board notified the plaintiffs of a hearing scheduled for April 17, 1996, to address certain identified violations. The plaintiffs were notified that a possible result of the hearing was revocation of the site plan approval. The planning board gave the plaintiffs thirty days from the date of a notice issued after the meeting to comply with all conditions. After the hearing, the board continued to receive complaints, and on June 5, 1996, unanimously voted to revoke the plaintiffs' site plan approval because the plaintiffs did not comply with the condition regarding surface water monitoring.

On August 14, 1996, the board voted to rescind the revocation after the plaintiffs complied with the conditions. The planning board, however, continued to receive complaints that the property was used during restricted weekends and that portable toilets, equipment, and tires were still being left in the flood plain. On October 19, the property was used by two teams to play a soccer game on a restricted weekend. Later that month, the board received additional complaints about equipment remaining in the flood plain zone during flooding conditions.

On November 8, 1996, the board sent the plaintiffs a letter informing them that the board had revoked their site plan approval. The letter informed the plaintiffs that

> the Planning Board on November 6, 1996[,] pursuant to RSA 676:4-a revoked your site plan approval for the following reasons:
> 1) Failure to remove equipment and materials from the site during high water periods or flood events.
> 2) Failure to be closed on October 19, a weekend following a tournament.
> These items are in direct violation with your approved scope of project.
> This Board has taken this action pursuant to RSA 676:[4-a, I(c)].

The letter further explained the plaintiffs' right to request a hearing, *see* RSA 676:4-a, and that if no hearing was requested, the board would record the revocation as provided in RSA 676:4-a, III.

The plaintiffs requested a hearing, which was held on February 19, 1997. At the hearing, the board permitted each person present, including the plaintiffs, counsel, and each abutter, four minutes to speak regarding the revocation. The board, in a 4-2 vote, concluded that the violations were material violations of the site plan and that the plaintiffs were unable to adequately control the site, and recorded the revocation of site plan approval.

The plaintiffs appealed to the superior court, which upheld the board's revocation. The court found that "the [n]otes of the meeting demonstrate . . . that Mr. Brewster did not dispute that he was in violation but rather discussed the reasons for the violations and how he intended to prevent future violations."

The court further noted that "[t]he Planning Board need not rely on future promises of compliance. Plaintiffs have already ignored past warnings and have been given opportunities to comply. Plaintiffs have demonstrated an inability to comply with all the conditions based on the number of times they have been in violation."

The court also noted that the two violations cited in the letter were not the first violations of which the plaintiffs had been informed, and that the site plan had already been revoked once for noncompliance with material conditions. The court found that the letter's reference to RSA 676:4-a, I(c) was a typographical error, and that the planning board gave the plaintiffs adequate notice and an opportunity to be heard, sufficient to satisfy due process.

On appeal, the plaintiffs argue that the trial court erred in ruling that the planning board's revocation was lawful and reasonable when the alleged violations were not material. The plaintiffs also argue that the planning board denied them due process: (1) by sending a notice identifying only two reasons for revocation but then considering additional reasons and incidents; (2) by sending a notice that incorrectly identified the applicable statutory provisions; and (3) by allowing them only four minutes to speak at the planning board hearing. Finally, the plaintiffs argue that the board erred as a matter of law in voting to revoke the site plan approval, and the superior court erred in upholding the revocation.

> Our standard of review of a trial court's decision strongly favors upholding that decision unless it is unsupported by the evidence or is legally erroneous. Our function on appellate review is not to decide whether we would have found differently but to determine whether a reasonable person could find as did the trial judge.

*Hansel v. City of Keene*, 138 N.H. 99, 101, 634 A.2d 1351, 1353 (1993) (quotation and citations omitted); *see Deer Leap Assoc. v. Town of Windham*, 136 N.H. 555, 557, 618 A.2d 837, 838 (1992).

RSA 676:4-a, the statute permitting the planning board to revoke a site plan approval, provides in relevant part:

> I. A . . . site plan or other approval which has been filed with the appropriate recording official under RSA 674:37 may not be revoked, in whole or in part, by the planning board, except pursuant to this section, and only under the following circumstances:
>
> . . . .
> (b) When the applicant or successor in interest to the applicant has performed work, erected a structure or structures, or established a use of land, which fails to conform to the statements, plans or specifications upon which the approval was based, or has materially violated any requirement or condition of such approval.
> (c) When the applicant or successor in interest to the applicant has failed to perform any condition of the approval within a reasonable time specified in the approval, or, if no such time is specified, within the time periods specified in RSA 674:39.
>
> . . . .
> II. Prior to recording any revocation under this section, the planning board shall give notice, as provided by RSA

676:4, I(d), to the public, the applicant or the applicant's successor in interest, and all abutters and holders of conservation, preservation, or agricultural preservation restrictions. The notice shall include the board's reasons for the revocation. A hearing with notice as provided in RSA 676:4, I(d) shall be held at the request of any party receiving such notice, submitted within 30 days of receiving such notice, or if the planning board determines to hold a hearing.

III. A declaration of revocation, dated and endorsed in writing by the planning board, and containing reference to the recording information for the plat, plan or other approval being revoked, shall be filed for recording with the register of deeds, no sooner than 30 days after written notification of the revocation is served on the applicant or the applicant's successor in interest, in person or by certified mail, or 30 days after any public hearing, whichever is later. If only part of an approval is revoked, that portion of land subject to revocation shall be clearly identified in the declaration. The declaration shall be recorded under the same name or names as was the original approval, as well as the names of subsequent owners, if any, of the land or part thereof subject to revocation, as identified by the municipality.

## I. Materiality of Violations

The plaintiffs challenge the findings of violations of the conditions of the site plan approval on the ground that the violations were not material. The plaintiffs first argue that they intended to be closed the weekend after the October tournament, and that through factors beyond their control, a game was played by two teams. Evidence in the record indicates that the plaintiffs made efforts to cancel the scheduled game, but the two teams recruited a substitute referee and played the game. The plaintiffs claim to have done all they could to stop that game. The record demonstrates, however, that the game had been scheduled months in advance, at a time when the game, if conducted as scheduled, would violate the post-tournament closure rule. Further, the record reveals that Benjamin Brewster had given keys to numerous persons. The plaintiffs claim to have given keys to responsible adults to insure compliance with the conditions; however, distribution of those keys impaired the plaintiffs' ability to control the site, supporting the board's finding that the plaintiffs

failed to adequately control the site to insure compliance with the board's conditions.

The plaintiffs next argue that there was no harm created by leaving the goal posts and portable toilets on the playing area during the high water periods, including those caused by the October 23, 1996, storm. The record reveals numerous complaints by neighbors, as well as board action on these concerns. The plaintiffs further contend that the scope of the October 23, 1996, storm was unanticipated and of such exceptional size and duration so as to occur only once or twice per century. The intervenors suggest that the existence and the size of that storm were predicted and anticipated, and that the board's conditions were designed to address these circumstances. Even assuming that the storm on October 23, 1996, was the proverbial "hundred years flood," the board's conditions were designed to prevent environmental damage in any storm. Further, the plaintiffs cannot rely on the fortunate circumstances that no resulting environmental damage resulted from their violation. While the plaintiffs' breach of the wetlands conditions did not result in actual damage, the breaches were nonetheless material because they increased the likelihood of damage the conditions were designed to mitigate or prevent.

■ The trial court found that the project was the subject of over fifteen public hearings and that all of the conditions were necessary for the site plan to be approved. The court found that leaving equipment and portable toilets on the field, along with play by teams during restricted periods, were material violations of the site plan. The court concluded that the record supports the conclusion that "every condition in the approval of this site plan is material." We agree with the trial court that both of the violations cited in the letter were material and could warrant revocation of the site plan.

## II. Due Process

We next address the sufficiency of the defendant's notice of the revocation provided to the plaintiffs. The plaintiffs allege that the notice was legally deficient in three aspects.

■ First, the plaintiffs suggest that the board voted to revoke the site plan without providing prior notice to the plaintiffs. RSA 676:4-a, II requires that notice of the "revocation" be sent after the board has voted to revoke, but before "recording any revocation under this section," with all interested parties having the right to request a hearing following the revocation. The statute permits the board to revoke the site plan approval before providing notice to a

party. We find that the town complied with the statutory requirements to notify the plaintiffs, and that the notice so provided did not violate due process. *Cf. Bragg v. Director, N.H. Div. of Motor Vehicles*, 141 N.H. 677, 679, 690 A.2d 571, 573 (1997).

█ Second, the plaintiffs contend that they were deprived of due process because the notice identified only two reasons for revocation, but the board considered additional reasons and incidents in its revocation decision. While the planning board may not revoke a site plan approval solely on the existence of a second violation after rescinding a prior revocation, we are mindful of the fact that planning boards have a continuous and ongoing relationship with developers. While neither the June 1996 revocation, nor unsubstantiated complaints by abutters contained in the record, are appropriate factors in determining the materiality of the two violations at issue before the board in November 1996, the board is entitled, once it finds that the present violations are material, to consider prior violations in determining the appropriate sanction or penalty for noncompliance with a material condition. RSA 676:4-a does not require revocation after violation of any material conditions of a site plan approval, but authorizes the board to exercise that exceptional power. Due process requires that the board provide notice of the circumstances to be considered in determining whether a violation occurred, not notice of evidence to be used in considering the sanction for the violation. *Cf. Stewart v. Cunningham*, 131 N.H. 68, 70, 550 A.2d 96, 97 (1988). The board properly notified the plaintiffs of the circumstances which led to its finding that the site plan was violated.

█ The plaintiffs allege that the citation in the board's November 8th letter to subsection I(c) of RSA 676:4-a, rather than subsection I(b), which the plaintiffs claim applies to this case, deprived them of due process. Due process does not require perfect notice, but only "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Douglas v. Douglas*, 143 N.H. 419, 423, 728 A.2d 215, 218-19 (1999) (quotation omitted). The trial court found that this citation was a typographical error that did not deprive the plaintiffs of notice of the complaint and an opportunity to be heard. We note that, before identifying the specific factors considered by the board in its revocation decision, the letter first cited the entire statute, and then listed the two factors considered. Although the notice identified an inapplicable subsection, the plaintiffs were adequately informed of

the nature of the circumstances the board considered in the revocation decision under RSA 676:4-a, and provided notice that they had a right to a hearing to challenge the revocation. The record does not indicate that the plaintiffs were confused, or raised any issues before the board, over which subsection applied to the proceedings before the board. We hold that the board's notice satisfied due process in this instance.

*III. Lawfulness of Revocation*

■ Next, we address whether the board's revocation of the plaintiffs' site plan approval was lawful. Planning boards must judiciously use their revocation power under RSA 676:4-a; however, planning boards are not required to ignore a history of violations and noncompliance. The record reveals a pattern of complaints and alleged violations by the plaintiffs, followed by hearings before the board and promises of remedial action by the plaintiffs, only to recur again. The town communicated with the plaintiffs by letter no less than eight times regarding alleged violations of site plan conditions raised by the town or abutters. The record reveals that the board attempted to craft a site plan with specific and detailed conditions within the parameters of the zoning ordinance that would satisfy the plaintiffs', the town's, and the abutters' concerns. However, the record reveals that the plaintiffs failed to insure compliance with these material conditions to the satisfaction of the abutters and, more importantly, the board. We cannot say that the planning board's decision to revoke was erroneous as a matter of law or unsupported by the record.

*IV. "Four-minute Rule"*

■ Finally, we decline to consider the plaintiffs' argument that, by allowing only four minutes to speak at the planning board hearing on revocation, the board denied them due process. This issue was first raised before the superior court, and therefore the planning board did not have an opportunity to address it. Accordingly, we find this issue not preserved. *Cf. Dube v. Town of Hudson*, 140 N.H. 135, 138, 663 A.2d 626, 628 (1995).

*Affirmed.*

HORTON, J., did not sit; the others concurred.