Merrimack
No. 2008-247

LAKESIDE LODGE, INC.

v.

TOWN OF NEW LONDON

Argued: October 15, 2008
Opinion Issued: December 5, 2008

*Orr & Reno, P.A.*, of Concord (*James P. Bassett* and *Jeffrey C. Spear* on the brief, and *Mr. Bassett* orally), for the petitioner.

*Upton & Hatfield, LLP*, of Concord (*Barton L. Mayer* on the brief and orally), for the respondent.

HICKS, J. The petitioner, Lakeside Lodge, Inc. (Lakeside), appeals an order of the Superior Court (*Abramson*, J.) affirming a boat use limit on Lakeside's Lake Sunapee dock, imposed by the Town of New London Zoning Board of Adjustment (ZBA). We hold that state law and regulations preempt the regulation imposed by the ZBA, and reverse.

The record supports the following relevant facts. Lakeside owns property in New London on Lake Sunapee's waterfront. The property includes a private dock which has been used by Lakeside's owners since at least the 1980s.

The respondent, Town of New London (Town), enacted a zoning ordinance in 1991 (the 1991 ordinance) designating Lakeside's lot within a "Shore Land Overlay District." *See* NEW LONDON, N.H., REV. ORDINANCES art. XVI (amended 2006). The ordinance prohibits the use of waterfront "common areas" for lake access except in compliance with its provisions and with planning board approval. *Id.* § D(3). A "common area" is defined as one "used by a group of [three] or more unrelated persons or by an association, club or organization consisting of [three] or more members." *Id.* The ordinance also states that "[a]ny use of a common area . . . for business or commercial purposes shall be subject to" special exception. *Id.* § E(3).

After receiving approval from the New Hampshire Department of Environmental Services (DES), Lakeside completed substantial dock repairs in 1995. The Town maintains that Lakeside's use intensified after these renovations.

In 2002, the Town asserted that the use of Lakeside's dock by multiple, unrelated persons violated the 1991 ordinance. Lakeside maintained that such use predated the 1991 ordinance, and applied to the New London Board of Selectmen (Selectmen) for an exemption, asserting that eleven users secured fifteen boats prior to the 1991 ordinance. The Selectmen determined that no preexisting, nonconforming use existed.

Lakeside appealed and the ZBA ultimately reversed, concluding that at least four users predated the enactment of the 1991 ordinance. The Selectmen issued a ruling interpreting the ZBA's decision to permit three owners and one non-owner to use the dock. The abutters sought to enforce this ruling in 2004 but the Selectmen declined, citing the lack of clarity from the ZBA as to how to proceed. The abutters appealed to the ZBA for clarification.

In 2007, the ZBA ruled that, because use by Lakeside's three owners predated the 1991 ordinance and because users typically invite guests, "there may be no more than six (6) users and six (6) boats at the dock at any one time." The ZBA intimated that renting dock space exceeded the scope of the "personal" use asserted by Lakeside's three owners. The superior court affirmed.

On appeal, Lakeside raises several arguments, but we need address only the preemption issue.

"Our review of zoning board decisions is limited." *Guy v. Town of Temple*, 157 N.H. 642, 649 (2008). We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. *Id.*

Lakeside argues that the Town's application of the 1991 ordinance is unlawful because the legislature has preempted local regulation of private dock use for boat storage on Lake Sunapee. Lakeside points to RSA chapter 482-A, which it characterizes as a comprehensive regulatory scheme governing the design and placement of docks over State-owned waters to achieve the State's goal of uniform regulation. Additionally, it argues that the State's permission to repair the dock in 1995 conflicts with local regulation restricting use of the renovated dock.

The Town argues that the State regulates only the construction of private docks, leaving to the Town the authority to regulate their use as extensions of the land. It maintains that dock users must cross the shorefront property to access the dock. It asserts its interest in the availability of parking and bathrooms in addition to its authority to promote environmental ends. It cites our holdings permitting municipalities to create more restrictive rules than the State. Finally, it argues that, by defining "wetlands" within RSA 674:55 (2008), the legislature intended to share concurrent regulatory authority over wetlands regulation.

The trial court ruled that the six-user, six-boat restriction was within the ZBA's authority, citing RSA 47:17, VII (2003) and our decision in *Gray v. Seidel*, 143 N.H. 327 (1999). We disagree.

We are the final arbiter of the meaning of a statute as expressed by the words of the statute itself. *Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511 (2006). "The state preemption issue is essentially one of statutory interpretation and construction — whether local authority to regulate under a zoning enabling act is preempted by state law or policy." *N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 611 (2004) (quotation and ellipsis omitted). "Preemption may be express or implied." *Id.* "State law preempts local law . . . when there is an actual conflict between State and local regulation." *Id.* "A conflict exists when a municipal ordinance or regulation permits that which a State statute prohibits or vice versa." *Id.* In addition, State law may preempt local regulation if such regulation "frustrates the statute's purpose," or "[t]he very nature of the regulated subject matter . . . demand[s] exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." *Id.* (quotation omitted).

The State has delegated to municipalities authority to "regulate and restrict" certain land uses. RSA 674:16 (2008). An overlay district, such as that created by the 1991 ordinance, is one "that is superimposed over one or more zoning districts . . . and . . . imposes specified requirements . . . in addition to those otherwise applicable for the underlying zone." 10 P. ROHAN, ZONING AND LAND USE CONTROLS § 53C.08[2][a], at 53C-444.90 (2008); *see, e.g., Brewster v. Town of Amherst*, 144 N.H. 364, 365 (1999). "Where the state has not preempted the area, a municipality may zone to protect its shorelines . . . ." 2 K. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING § 9:13, at 144 (4th ed. 1996).

The parties and proceedings below assumed that a nonconforming personal use predated the 1991 ordinance. Thus, our inquiry is limited to whether the local attempt to restrict *personal* use of Lakeside's dock is permissible. *See Cherry v. Town of Hampton Falls*, 150 N.H. 720, 725 (2004).

The use of lakes of ten or more acres, such as Lake Sunapee, is controlled by the State, which holds these "valuable resources," RSA 483-B:1, II (2003), in trust for public use. *See* RSA 271:20, I (1999); RSA 483-B:1, II (The State has the "jurisdiction to control the use of the public waters and the adjacent shoreland for the greatest public benefit."). The State is the exclusive steward of public trust rights, a bundle of "all useful and lawful purposes," *State v. Sunapee Dam Co.*, 70 N.H. 458, 460 (1900),

such as the common law right to boat recreationally, *see Hartford v. Gilmanton*, 101 N.H. 424, 425-26 (1958). *See generally* 6 WATERS AND WATER RIGHTS 801-12 (Robert E. Beck ed., 1991, 2005 repl. vol.); Annotation, *Rights of Fishing, Boating, Bathing, or the Like in Inland Lakes*, 57 A.L.R.2D 569, 577-78 (1958).

Numerous statutes regulate the right to boat. *See* RSA ch. 233-A (1993 & Supp. 2008) ("Access to Public Waters"); RSA ch. 270 (1999 & Supp. 2008) ("Supervision of Navigation; Registration of Boats and Motors; Common Carriers by Water"); RSA ch. 270-A (1999) ("Use of Houseboats"); RSA ch. 270-B (1999) ("Abandoned Boats"); RSA ch. 270-D (1999 & Supp. 2008) ("Boating and Water Safety on New Hampshire Public Waters"); RSA ch. 485 (2001 & Supp. 2008) ("New Hampshire Safe Drinking Water Act"); RSA ch. 485-A (2001 & Supp. 2008) ("Water Pollution and Waste Disposal"); RSA ch. 487 (2001 & Supp. 2008) ("Control of Marine Pollution and Aquatic Growth"). This broad statutory framework is intended to safeguard public waters "in light of the fact that competing uses for the enjoyment of these waters, if not regulated for the benefit of all users, may diminish the value to be derived from them." RSA 270:1, II (1999).

 As the steward of public waters, the State safeguards the right to use and enjoy public waters by avoiding piecemeal on-water regulation. *See Opinion of the Attorney General*, No. 0-87-067 (August 2, 1989) (public trust doctrine imposes limits upon municipality's use of public waters); *see also* RSA 483-B:1, II, IV (2001) (asserting State's "interest in protecting [the public waters of New Hampshire]" and seeking to avoid "uncoordinated, unplanned and piecemeal development along the state's shorelines"); RSA 482-A:14-b, II (2001) (allowing municipality to petition superior court for enforcement as the remedy for violations of RSA chapter 482-A, and requiring notice of such petition to the attorney general and the DES commissioner, "who may take such steps as they deem necessary to ensure uniform statewide enforcement"). Nowhere is the peremptory judgment of the legislature better expressed than in RSA chapter 483-A, creating the Lakes Management Protection Program (LMPP) and ordering the "develop[ment of] detailed guidelines for coordinated lake management and shoreland protection plans together with recommendations for implementation." RSA 483-A:7, I (Supp. 2008).

 In addition to enjoying the common law right to boat recreationally in Lake Sunapee, Lakeside appears to own the littoral rights accompanying its waterfront lot. "Littoral rights are incidental property rights associated with ownership of lakeshore property." *Donaghey v. Croteau*, 119 N.H. 320, 323 (1979). While the State holds title to the bed of the great ponds, *State v. Stafford Company*, 99 N.H. 92, 97 (1954), "littoral owners have rights

which are more extensive than those of the public generally." *Sundell v. Town of New London*, 119 N.H. 839, 844 (1979) (quotation omitted). "These . . . include . . . the right to use and occupy the waters adjacent to their shore for a variety of recreational purposes . . . ." *Id.*; *see also Stafford Company*, 99 N.H. at 97. Such littoral rights, however, "are always subject to the paramount right of the State to control them reasonably in the interests of navigation, water storage and classification, health and other public purposes." *Stafford Company*, 99 N.H. at 97; *see also* RSA 483-A:3 (2001).

■ Against this backdrop we first observe that, by expressly permitting Lakeside to repair its dock in 1995, the State has placed its imprimatur upon the use of Lakeside's dock for personal boating. Presumably, the Town received notice of its opportunity to participate in this process. *See* RSA 482-A:3, I (Supp. 2008). Construction connotes use. Construction of docks on public waters is prohibited without a DES permit. *See* RSA 482-A:3, I(a) (Supp. 2008); RSA 483-B:9, II(c) (Supp. 2008). RSA chapter 482-A prescribes detailed siting and construction requirements. *See* RSA 482-A:3, XIII (2001). The DES administrative rules prescribe additional restrictions. *See* N.H. ADMIN. RULES, Env-Wt 402.01 ("Configuration"), 402.02 ("Navigation Space"), 402.03 ("Dimensions"), 402.04 ("Setbacks").

Importantly, the administrative regulations prescribe frontage requirements per "boating slip" for lots with more than seventy-five feet of shoreline frontage in order

> [t]o lessen congestion, improve public safety and *navigation*, protect neighboring property values, provide sufficient area for construction of facilities, provide adequate area for *boat maneuvering*, and protect health, safety and general welfare.

N.H. ADMIN. RULES, Env-Wt 402.13 (emphases added); *cf.* N.H. ADMIN. RULES, Env-Wt 402.12 (applicable to lots with less than seventy-five feet of frontage).

■ We find implicit within the permission to repair its dock the right to use the entire repaired dock for personal boating and boat docking — a clear exercise of its common law and littoral rights. *Cf. N. Country Envtl. Servs.*, 150 N.H. at 615 (holding that RSA chapter 149-M preempted local regulation because the regulatory regime sought to achieve broad goals, delegated power to DES and prescribed detailed "design, construction, operation and closure" standards for facilities); *Wasserman v. City of Lebanon*, 124 N.H. 538, 543 (1984) (ordinance preventing reconstruction of

dam preempted by state law); 6 ROHAN, *supra* § 36.02[1][b], at 36-27 ("A municipality may not . . . prohibit a use expressly permitted by state statute.").

The statutory scheme regulating the "mooring" of watercraft further reveals the State's expectation that private dock users will make use of the entire dock for personal boating and docking. *See* RSA 270:59-:72 (1999 & Supp. 2008). The provisions of RSA chapter 270 are intended to "maintain[] jurisdiction to control the use of public waters for the greatest public benefit," RSA 270:60, I(a) (1999), by curtailing the "undue proliferation of moorings," RSA 270:60, I(c) (1999). The department of safety is charged with issuing mooring permits on Lake Sunapee. *See* RSA 270:61, I (Supp. 2008); *see also* N.H. ADMIN. RULES, Saf-C 408.04. Individual mooring permit applications require the applicant to list the length and width of existing docking structures together with the number of boating slips and explain why they are insufficient to meet the user's need. *See* N.H. ADMIN. RULES, Saf-C 408.05(a)(1), 408.06(b)(12)-(13), (15)(d)(1). These provisions impel private dock users to exhaust available watercraft storage before seeking a mooring permit.

The Town argues that RSA 674:21, I(j) (2008) allows additional municipal regulation of Lakeside's private dock. We disagree. *See JTR Colebrook v. Town of Colebrook*, 149 N.H. 767, 770-72 (2003); 3 A. H. RATHKOPF ET AL., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 48:16, at 48-37 to -38 (2008) ("Local control and regulation of navigable waters within a state often is preempted by state law."). *But cf. Cherry*, 150 N.H. at 725 (declining to address validity of ordinance, but stating that DES permit does not prove compliance with ordinance and that "municipality is not estopped from creating more restrictive rules for wetlands issues than those required by the Wetlands Board" (quotation and brackets omitted)); *Anderson v. Motorsports Holdings*, 155 N.H. 491, 501 (2007) (quoting language from *Cherry* in rejecting due process argument). Although the ZBA has broad authority to act under RSA 674:33 (2008), *see Ouellette v. Town of Kingston*, 157 N.H. 604, 610 (2008), it acted ultra vires by imposing the six-user, six-boat limit upon Lakeside.

Whether the ZBA acted with authority requires examination of whether the conditions on use within the 1991 ordinance apply to personal boating and boat docking. The six-user, six-boat limit was an attempt to define and/or reasonably restrict a grandfathered use — one asserted only after the Town maintained that Lakeside had violated the provisions of the 1991 ordinance restricting the number of non-related waterfront lot users. Although we have expressly permitted a ZBA to define and constrain

nonconforming uses, *see Peabody v. Town of Windham*, 142 N.H. 488, 492 (1997); *Vlahos Realty Co. v. Little Boar's Head District*, 101 N.H. 460, 464 (1958), such authority derives from, and is coextensive with, the authority to enact the underlying ordinance because nonconforming use is the byproduct of regulation. *Cf.* RSA 674:33, I(a) (zoning board has power to hear and decide appeals if error alleged "in the enforcement of any zoning ordinance adopted pursuant to RSA 674:16"); *Peabody*, 142 N.H. at 493 ("[T]he ultimate purpose of zoning regulations is to reduce nonconforming uses to conformity as quickly as possible.").

 "It is well established in this State that cities and towns have only those powers which are granted to them by the legislature." *Dugas v. Town of Conway*, 125 N.H. 175, 181 (1984). The Town lacks specific legislative authority to infringe upon the right to boat. Such authority is necessary to enact on-water regulations within public waters. *See Opinion of the Attorney General, supra* (specific legislative authorization required if local municipality's action infringes upon public trust rights in bodies of water); 6 WATERS AND WATER RIGHTS, *supra* at 807 (legislative grant of authority required if municipality's action interferes with public trust rights); *Erbsland v. Vecchiolla*, 313 N.Y.S.2d 576, 578 (App. Div.), *appeal denied*, 27 N.Y.2d 485 (1970) (holding that municipality's zoning power did not extend into navigable waters because they "are within the sole jurisdiction and control of the State of New York").

 The Town enacted the 1991 ordinance by invoking RSA 674:21, I(j), a grant of authority to develop "innovative land use controls" to accomplish environmental objectives. *See* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 15.07, at 89-90 (Supp. 2007) (describing inception of innovative land use control legislation). By any measure, the boundaries of the Town's authority under RSA 674:21, I (2008) are not precisely drawn, *see* RSA 674:16, II (2008), but to say that the statute confers general authority incidental to shoreland protection to regulate personal boating and boat docking upon State-owned waters stretches its language beyond logic. *See Weare Land Use Assoc.*, 153 N.H. at 511 ("We interpret a statute to lead to a reasonable result . . . ."); *JTR Colebrook*, 149 N.H. at 771.

 Perhaps the clearest statutory grant of retained, local shoreland protection authority is found within the Comprehensive Shoreland Protection Act, RSA chapter 483-B, which sets the minimum standards for shoreland protection, *see* RSA 483-B:2 (2001), and permits municipalities to "adopt land use control ordinances . . . which are more stringent." RSA 483-B:8, I (2001); *see also N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H.

709, 713-17 (2007) (discussing and upholding constitutionality of RSA chapter 483-B). RSA chapter 483-B, however, lacks any provisions regulating the use of docks for boating or boat docking as part of shoreland protection. *See* RSA ch. 483-B (2001 & Supp. 2008). "Had the legislature intended to permit municipalities to enact [such regulations], it could have explicitly done so." *JTR Colebrook*, 149 N.H. at 771-72.

The DES guidelines state that "only the federal . . . and state . . . government[s] ha[ve] the authority to impose on-lake regulations" upon State-owned public water and that dock and mooring regulations are considered "on-lake" management. THE N.H. GUIDELINES FOR COORDINATED LAKE MGMT. AND SHORELAND PROT. PLANS 53-54 (DES 2008), *available at* http://des.nh.gov/organization/commissioner/pip/publications/wd/documents/nhdes-wd-08-8.pdf. Indeed, vesting localities with broad authority to enact piecemeal on-water regulation of recreational boating and boat docking would threaten the State's need and desire for uniform regulation, which is expressly manifested within the broader statutory scheme governing regulation of public waters. "The legislature will not be presumed to pass an act . . . nullifying, to an appreciable extent, the purpose of the statute." *Weare Land Use Assoc.*, 153 N.H. at 511-12; *Erbsland*, 313 N.Y.S.2d at 578 (allowing municipality to regulate navigable waters owned by the state "would have the effect of nullifying rights which the State has the authority to grant"); 6 ROHAN, *supra* § 36.02[1][a], at 36-25 ("[M]unicipal zoning ordinances cannot frustrate the purpose or implementation of a general or special law enacted by the state legislature."); 3 RATHKOPF, *supra* at 48-37 ("[L]ocal regulation of wharves . . . may not be exercised contrary to state statutory provisions or policy.").

RSA 47:17, VII, relied upon by the trial court in rejecting Lakeside's preemption argument, grants towns only the authority to regulate *public* docks. *See* RSA 47:17, VII; *Gray*, 143 N.H. at 330. Consistent with our well-established rules of statutory interpretation, we do not find within RSA 47:17, VII, implied local authority to regulate the use of private docks for personal boating or boat docking on public waters. *St. Joseph Hosp. of Nashua v. Rizzo*, 141 N.H. 9, 11-12 (1996) ("Normally the expression of one thing in a statute implies the exclusion of another." (quotation omitted)).

Contrary to the ZBA's assertion, the statutory definition of "wetlands," found within the provisions authorizing local land use regulation, does not, by itself, suggest local authority to regulate personal boating and boat docking on waters held in trust for the public. *See* RSA 482-A:2, X (Supp. 2008) (" 'Wetlands' means an area that is inundated or saturated by surface water or groundwater at a frequency and duration sufficient to

support, and that under normal conditions does support, a prevalence of vegetation typically adapted for life in saturated soil conditions."). The legislature could have defined "wetlands" either to facilitate wetland setbacks or for local wetland regulation outside the sphere of any exclusive State wetland regulation. *See Blagbrough Family Realty Trust v. Town of Wilton*, 153 N.H. 234, 238 (2006) ("[M]unicipalities may adopt local ordinances to further wetland protection in areas outside the State's regulation."); *Cherry*, 150 N.H. at 725 (examining compliance with local wetlands ordinance); 3 RATHKOPF, *supra* at 48-37 ("Local regulation of wetlands is permitted when not in direct conflict with state law.").

Given our conclusion, we do not reach the other issues raised in this appeal.

*Reversed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.